CLARA ALICE STREIGHT, APPELLANT, V. FIRST TRUST COMPANY OF OMAHA ET AL., APPELLEES.

275 N. W. 278

FILED OCTOBER 1, 1937. No. 30033.

*William C. Ramsey* and *Sherman Welpton, Jr.*, for appellant.

*Finlayson, Burke & McKie, contra.*

Heard before ROSE, GOOD, EBERLY, DAY and CARTER, JJ., and HASTINGS and RINE, District Judges.

RINE, District Judge.

This is an action brought by the appellant, Clara Alice Streight, who will hereinafter be referred to as plaintiff, against the appellees First Trust Company of Omaha and the National Company of Omaha, who will be hereinafter referred to respectively as Trust Company and National Company, for damages claimed to have been sustained by plaintiff through the alleged wrongful conduct of the defendant Trust Company while acting in a trust capacity. The defendant National Company succeeded to all the rights and assumed all the liabilities of the defendant Trust Company and cause of action against it is based upon that fact.

At the close of plaintiff's case defendants moved the court for a directed verdict in their favor. This motion was sustained and the case was dismissed. From that action plaintiff has appealed.

On April 20, 1923, one Laura I. Troth obtained a loan of $75,000 from defendant Trust Company. This loan was evidenced by 85 separate bonds or notes, 65 of which were for $1,000 each, and 20 of which were for $500 each. An·

examination of these bonds or notes clearly indicates that it was contemplated that they should be sold and that when held by third persons the Trust Company should act as trustee for such persons in handling the loan. For convenience they will be referred to as bonds. These bonds were drawn payable to the order of First Trust Company of Omaha, drew interest at the rate of 5½ per cent. per annum, payable semiannually; the interest payments were represented by coupon notes which were made payable to First Trust Company of Omaha or bearer; both the bonds and coupon notes were made payable at the office of the Trust Company, Omaha, Nebraska.

The bonds that are the subject of this controversy were indorsed as follows: "For value received, the within note and attached coupons are hereby assigned without recourse. First Trust Company of Omaha, By Will T. Graham, Vice President."

This Troth loan was secured by a first mortgage upon real estate located in Dixon county, Nebraska, consisting of several tracts of land aggregating somewhere between 860 and 880 acres. In addition to this first mortgage, the mortgagor therein at the same time gave a second mortgage for $3,750, which was payable in five annual instalments on May 1, 1924, 1925, 1926, 1927 and 1928. These instalment payments were evidenced by five promissory notes for $750 each, payable to the order of the Trust Company, and represented the commission for making the loan.

Part of these bonds which the first mortgage was given to secure were sold by the Trust Company to investors; the remainder were retained by the Trust Company and were held by defendant National Company, the Trust Company's successor, at the time of the trial of this case.

This first mortgage, among other things, provided that the mortgagor should procure and maintain policies of insurance on the buildings located upon the mortgaged premises in the amount of $8,000, loss, if any, to be payable to the mortgagee, the Trust Company, and that the mortgagee should have the right to collect and receive all moneys

which might become payable from such insurance, and apply the same, when received, to the payment of the bonds and all amounts due thereunder; that the mortgagor should pay the taxes, assessments and public charges levied against the mortgaged premises, or any part thereof, before the same became delinquent, and all insurance premiums for the amount of insurance provided for in the mortgage, and that, if any thereof were not paid, the mortgagee might elect to pay such taxes, assessments; public charges and insurance premiums, and the amount so paid should be a lien upon the mortgaged premises, and be secured by the mortgage, with interest thereon at the rate of 10 per cent. per annum; that if the mortgagor should fail to pay the bonds secured or any interest on any of such bonds according to the tenor and effect of the bonds and coupons when the same became due, or if the mortgagor should fail to pay any tax, assessment or public charge or any insurance premium, or should fail in any particular to conform or comply with any of the conditions or agreements of the mortgage, then all of the bonds and interest thereon, secured by the mortgage, should at the option and upon the declaration of the mortgagee, without notice, at once mature and become payable; that in case the bonds and coupons secured by the mortgage, or any of them, were held by another party or other parties than the mortgagee, and by lapse of time matured and were not paid, or in case of default in any particular, either in the bonds or coupons, or in the provisions or conditions of the mortgage, and by reason thereof the bonds and indebtedness should be declared matured and payable, then, in either case, the Trust Company, as a trustee, for the like use and benefit of the holders of the bonds and the obligations secured by the mortgage, might proceed to collect all of the bonds, interest thereon, and indebtedness however evidenced, by action or actions at law, and to foreclose the mortgage; that each and all of the bonds matured on May 1, 1933, and were without preference or priority or distinction as to lien or otherwise of any one bond over any

other bond by reason of priority in issue or negotiation thereof or for any reason whatsoever. These were the only provisions of the mortgage relevant here.

The first mortgage bonds contained, among other things, statements and provisions as follows: That the bonds were secured by a mortgage made by Laura I. Troth, widow, conveying to the Trust Company real property in Dixon county, Nebraska, and that it had been agreed that, in case default was made in the payment of any interest coupon or in the performance of any covenant contained in the mortgage, the bond and all interest coupons should forthwith mature and become due and payable, at the option of the Trust Company as trustee for the holder of the bond, without demand or notice; that the bonds should bear interest after maturity whether maturity resulted through the lapse of time or default, at the annual rate of 10 per cent., payable annually until paid; that each bond was one of a series of 85 bonds aggregating $75,000 secured by the Troth first mortgage, and that each and all matured on the same date and were without preference or priority or distinction as to lien or otherwise of any one bond over any other bond by reason of priority in the issue or negotiation thereof or for any reason whatsoever, and that if any default occurred in the bond or any of the bonds, or in the mortgage, then the Trust Company might, as trustee for the holders of the bond and of all the bonds, without notice to or hindrance from any one, declare the bond and all of the bonds matured, due and payable.

On March 14, 1924, plaintiff purchased from the defendant Trust Company seven of these first mortgage bonds for $6,000, their par value.

The record shows that subsequent to the purchase of these bonds by plaintiff the mortgagor failed to pay the interest coupons promptly as they became due. The mortgagee advanced the $2,062.50 necessary to pay the interest coupons falling due on May 1, 1924. This advancement was repaid by the mortgagor as follows: May 3, 1924, $1,325; May 22, 1924, $737.50. Money to pay the November 1,

1924, interest coupons in the amount of $2,062.50 was advanced by the mortgagee, and it was repaid by the mortgagor as follows: November 3, 1924, $1,670.01; December 6, 1924, $269.47; December 31, 1924, $123.02. Of the money necessary to pay the May 1, 1925, interest coupons, $483.40 was advanced by the mortgagee, and it was repaid by the mortgagor on May 7, 1925. The interest was also advanced to take up the November 1, 1925, interest coupons and was repaid as follows: December 31, 1925, $1,195.62; January 8, 1926, $346.95; March 12, 1926, $519.93. Of the money necessary to pay the interest coupons due May 1, 1926, $494.68 was advanced by the mortgagee; this was repaid on May 12, 1926. No further interest payments were made by the mortgagor, although the mortgagee made efforts from time to time to make collections. When the defaults continued in 1927 the defendant Trust Company took steps to and did acquire title to the mortgaged property without foreclosure, as trustee for the bondholders, and proceeded to manage the property for the benefit of the bondholders. The mortgagee advanced the money for the payment of the interest coupons due on November 1, 1926, and for subsequent interest payments up to the interest payments due November 1, 1930. It also advanced the necessary expenses incident to acquiring and operating the mortgaged property, but as the income from the operations of the mortgaged property over a period of years had not been sufficient to pay the operating expenses and the amount of interest falling due on the loan, the Trust Company discontinued making advancements for payment of interest. In handling these transactions the Trust Company had a separate book account dealing with this loan wherein it debited the trust estate for all advances made, expenses incurred, and other charges against the trust estate, and debited itself for the money it received from the operation of the mortgaged property. The result of this bookkeeping discloses that on November 6, 1930, the mortgagee had made advancements to pay interest, taxes, repairs and otherwise looking after this property in the sum

of $26,872.25, and had received from the operation of said mortgaged premises the sum of $7,756.41. The security was still held at the time of the trial by the trustee, without any claim to ownership therein but as trustee for the bondholders. Approximately all the bondholders had from time to time been advised of what was being done by the mortgagee acting as trustee for the bondholders during all the times that the loan was in default. Plaintiff, however, was not so advised until October 31, 1930. The fact that plaintiff was not so advised earlier was explained by the witness Selby, an officer of the Trust Company, as being due to the fact that plaintiff was a resident of California, while nearly all of the bondholders resided either in Omaha, Nebraska, or in the immediate vicinity of that city. These bondholders usually presented the interest coupons personally at the window of the Trust Company's place of business for payment, at which time the bondholders were advised by the Trust Company as to what was going on and how the matter was being handled, and in this connection were shown the books of the company relating to this loan. Shortly prior to the interest payment date of November 1, 1930, defendant Trust Company determined that it would no longer make advancements to pay interest coupons as they fell due, and on October 31 advised plaintiff as follows:

"We return herewith seven Coupons No. 15, on Bonds Nos. 7333, 7334, 7335, 7336, 7337, 7371 and 7372, aggregating $165—Laura I. Troth, evidencing the November 1, 1930, interest.

"Our committee has concluded that in the future the interest on these bonds must be paid from the earnings of the property, and inasmuch as there are not sufficient funds to retire these coupons at the present time, we must necessarily return them unpaid.

"In a few days we will forward a statement showing the general situation with reference to this loan."

A short time after plaintiff received the statement referred to in this letter, which in part reads as follows:

"Omaha, Nebraska, November 6, 1930.
"Memorandum to the Bondholders of Laura I. Troth Bonds, Loan No. 7298:

"We submit herewith a statement of the situation showing the transactions in connection with the above matter, including all advancements by First Trust Company, Trustee:

Advancements—Interest, Taxes, Repairs, etc.— $26,872.25
Receipts— 7,756.41

"Balance due First Trust Company— $19,115.84

"Sometime ago the borrower became involved and by reason of representations which were thought to be sufficient at the time the trustee advanced interest and taxes, etc., in accordance with the statement above. It soon became obvious, however, that the borrowers were too heavily involved to carry on and the Trust Company, in behalf of the bondholders, arranged a settlement in lieu of foreclosure, acquiring the title for the benefit of the bondholders, and since that time has been managing the farms. * * *

"The loaning committee of the Trust Company has adopted a policy which will be followed until further notice, viz.: That taxes, repairs, etc., will be paid out of income and that all excess income will be divided between the bondholders and the Trust Company in proportion to their respective interests, until the property is sold, at which time the proceeds will be divided as provided in the mortgage."

Following this memorandum plaintiff received from the Trust Company an itemized statement of the advances and the money received as of date May 11, 1931. This discloses that at the date of this memorandum there was due upon this loan $77,062.50, and that the interest of the Trust Company by reason of advancements, expenses, etc., was $19,142.71. Plaintiff also received a further statement of the same date which disclosed that the entire obligation against the mortgaged real estate, including the advancements made by the Trust Company, was $96,205.21, and

this statement showed the proportionate interest of the several parties to be as follows:

| | | |
|---|---|---|
| Plaintiff's interest in the real estate | 6.408 | per cent. |
| Interest of other bondholders | 66.752 | per cent. |
| Interest of First Trust Company by reason of advancements | 19.897 | per cent. |
| Interest of First Trust Company by reason of bonds owned | 6.943 | per cent. |
| Total | 100. | per cent. |

No action was taken by plaintiff after she was advised of the manner of the handling of this loan by the defendant Trust Company on October 31, 1930, until June 16, 1934, when she filed a petition against defendants in this proceeding wherein she alleged for cause of action that during all the period of time from November 1, 1926, until and including May 1, 1930, default had been made by the mortgagor in the payment of taxes assessed against the mortgaged real estate for the years 1925 to 1929, inclusive, and that default had also been made, by the maker of the bonds, in the payment of interest due upon the bonds; that defendant Trust Company, in derogation of its duty and of the rights of plaintiff, wrongfully, fraudulently and without notice to plaintiff, advanced the interest due plaintiff upon her said bonds, and wrongfully, fraudulently and negligently failed to notify or apprise plaintiff of the defaults which had existed under the terms of said bonds and mortgage since November 1, 1926; that plaintiff did not know of the complained of conduct of defendant Trust Company until October 31, 1930; and that the defendant Trust Company was negligent and derelict in the performance of its duty as agent or trustee of plaintiff during all of the period from November 1, 1926, until and including October 31, 1930, in failing to disclose to plaintiff the conditions and circumstances which existed relative to the nonpayment of the interest on her bonds and the nonpayment of taxes assessed against the mortgage security; that the security for plaintiff's bonds had depreciated and steadily

declined in value from November 1, 1926, until October 31, 1930; and that the defendant Trust Company was further negligent and derelict in the performance of its duty to plaintiff in failing to promptly institute an action to foreclose the mortgage, to protect plaintiff's right and interest in the security, and in making advancements of interest to plaintiff without imparting knowledge or notice of such fact to plaintiff, and that if plaintiff had known of defaults which had occurred, within reasonable time after their occurrence, plaintiff could have protected herself and saved the face amount of her bonds. The prayer of this petition is for damages in the amount of $4,000, which she alleged arose because the security for her bonds was worth at the time of the filing of the petition not to exceed $2,000, and that she had been damaged to the extent of the difference between the present value of her interest in this security and the face value of her bonds. She then prays for $4,000 damages, with interest at 6 per cent. per annum from October 31, 1930.

Thereafter, on November 2, 1934, plaintiff filed her amended petition which we will refer to as first amended petition. This petition is in all respects, so far as matters here considered, similar in form and language to the original petition. On February 13, 1935, after the statute of limitations had run against the claimed cause or causes of action of the plaintiff arising out of the matters in controversy, she filed her second amended petition. In this petition she alleges as a basis for her right to recover against the defendant Trust Company that that company was negligent, derelict and fraudulent in its duties and obligations to plaintiff under the trust reposed in said defendant Trust Company in the following respects:.

(a) That the Trust Company negligently, wrongfully and fraudulently permitted the taxes for the years 1925, 1926, 1927, 1928 and 1929, assessed against the mortgaged real property, to become delinquent, without imparting knowledge or notice to plaintiff, and purchased said taxes at a tax sale, seeking thereby to acquire a superior lien to that of the plaintiff.

(b)   That said defendant Trust Company negligently, wrongfully and fraudulently and in violation of the duties imposed upon it by virtue of its confidential relationship permitted the mortgagor to default in the payment of the interest due under the bonds November 1, 1926, May 1, 1927, November 1, 1927, May 1, 1928, November 1, 1928, May 1, 1929, November 1, 1929 and May 1, 1930, without notifying or apprising plaintiff of the nonpayment of said interest items by the original mortgagor, and in further concealing from plaintiff the nonpayment of said interest items by advancement to plaintiff of the interest which was due and payable on her said bonds and each of said bonds.

(c)   That the defendant Trust Company was negligent, fraudulent and remiss in its duties in failing to disclose to and in concealing from plaintiff the defaults that existed, as alleged in the two paragraphs (a) and (b) above set out, and in failing to institute foreclosure proceedings or to take any other action to properly protect the interests of plaintiff from the time that defaults originally existed under the terms of said bonds.

(d)   That the defendant Trust Company was the owner of a second mortgage covering the mortgaged real property; that in seeking to protect its own interests which were in conflict with the interests of plaintiff herein, said Trust Company, in further derogation of the rights of plaintiff and in utter disregard of its duties to plaintiff, accepted a deed granting and conveying said real estate to said Trust Company and excused and exonerated the original mortgagor from personal liability on said mortgagor's note at a time when said mortgagor was financially responsible for the payment of the same, and treated said real estate as its own; and in that connection, said Trust Company, notwithstanding it was now the owner of said real estate in fee simple and had thus merged its interest therein, in further derogation of the rights and interests of plaintiff collected the income from said real estate, amounting to several thousands of dollars, and retained said income for its own, purporting to use a part of said money to dis-

charge items unpaid on its said second mortgage and to reimburse itself for advances made to bondholders as hereinbefore alleged, for which said Trust Company at that time had no valid claim, having become the owner in fee simple title to said real estate, and having merged its interest thereon.

(e) That said Trust Company incurred numerous and excessive expenses and charges in connection with using said real estate as its own, and seeking to profit at the expense of the bondholders, including plaintiff herein, all of which said expenses the Trust Company now seeks to foist and impose on those interested in said mortgage lien, among them the plaintiff.

The plaintiff further alleges in this second amended petition that at the time of the purchase of her bonds, and that at all times until 1928, the bonds were worth their face, fully and amply secured, but that the value of the security of the bonds was depreciating steadily during the years 1926, 1927, 1928, 1929 and 1930, and further, that had plaintiff been promptly informed of the defaults that existed under the terms of her bonds, she would have insisted that foreclosure action be instituted promptly, or that other action be taken to prudently and properly protect her rights and interest, and would thus have saved the full amount that she had invested in said bonds, or had said Trust Company properly served the interests of the bondholders and the plaintiff by instituting foreclosure action or by taking other proper steps to protect the interest of the bondholders at the time the original defaults existed under the terms of said mortgage, it would have saved for plaintiff the face amount of her said bonds, but that as a result of the negligent, false, fraudulent and wrongful conduct of said defendant Trust Company, as alleged in the second amended petition, the value of plaintiff's bonds had been wholly and completely destroyed, and by reason thereof plaintiff had been damaged in the sum of $6,000. In this petition she prays for judgment for $6,000, with interest thereon at the rate of 6 per cent. per annum from May 1, 1930.

At the close of the plaintiff's testimony she asked leave of court to amend her second amended petition by striking out of the last paragraph thereof the following: "But that as a result of the negligent, false, wrongful and fraudulent conduct of said Trust Company, as hereinbefore alleged, the value of plaintiff's said bonds has been wholly and completely destroyed and by reason thereof plaintiff has been damaged in the sum of $6,000" and substitute in lieu thereof the following: "But as a result of the negligent, false, wrongful and fraudulent conduct of said Trust Company, as hereinbefore alleged, the value of all of said real estate depreciated until it was worth not to exceed $35,200 in the last few months of 1930, and has been worth not to exceed said amount since that time; that plaintiff's interest in this security, according to the computation of said Trust Company, is 6.408 per cent. or not to exceed $2,300 since October, 1930; that the full amount due on plaintiff's said bonds, with interest thereon at the rate of 5½ per cent. per annum, as of this date, is in excess of $7,950; that plaintiff, accordingly, has been damaged in the amount of $5,650 as of this date." And in place of the prayer of said amended petition, to amend said prayer so as to pray for a judgment for damages in the amount of $5,650, with interest from the date of the amendment. Leave was granted to make this amendment, by the court, over the objection of the defendants. Following the making of this amendment and after plaintiff had rested, defendants made the following motion:

"Come now the defendants, the First Trust Company and the National Company of Omaha, and move the court to direct a verdict in favor of these defendants, and against the plaintiff, or in the alternative to dismiss the petition of the plaintiff for the following reasons:

"First: That the cause of action alleged in plaintiff's second amended petition is barred by the statute of limitations; said cause of action appearing from her petition to have accrued on the 31st day of October, 1930, and said second amended petition having been filed on the 13th day of February, 1935.

"Second: That the cause of action alleged in plaintiff's second amended petition is a new and different cause of action than that alleged in her petition, and the cause of action alleged in said second amended petition is barred by the statute of limitations, the cause of action therein stated having been abandoned by plaintiff at the time she filed her second amended petition.

"Third: That plaintiff has failed to state a cause of action and produce evidence in support thereof, either on her second amended petition or on the amendment thereto, and there is insufficient evidence thereon to be submitted to the jury in the following respects:

"(a) That there is no evidence of negligence on the part of the defendants for consideration by the jury.

"(b) That there is no evidence of fraud and concealment, as alleged in the petition, for submission to the jury.

"(c) That there is no evidence to show that the plaintiff could have done anything to protect her interests, had she known of the situation alleged in her petition, and that if offered such showing would be incompetent and speculative, she being the holder of only $6,000 in bonds of a $75,000 bond issue, and suing in her own behalf and not on behalf of other bondholders.

"(d) And that there is no evidence that the interests of the plaintiff have not been fully protected by the defendants in the management and handling of the trust estate.

"Fourth: That there is no evidence that the course of action pursued by the defendants in the management of the Troth loan was detrimental to the interests of the plaintiff, nor that they were remiss in their duties toward plaintiff, or that plaintiff could or would have pursued a different course had she been advised of the situation.

"Fifth: That there is no proper evidence of damages, and no evidence on which the question of damages or the measure thereof can be submitted to the jury."

The motion was sustained and the case dismissed. Of this action plaintiff complains in this appeal.

It is strongly urged by defendants that the action of the

trial court should be sustained on the ground that the second amended petition pleaded a new and different cause of action than that pleaded in the original and first amended petitions; that against the new cause of action the statute of limitations had become a bar before the second amended petition was filed; that the statute of limitations was pleaded within time and that, therefore, no recovery could be had in this case; also that plaintiff could not avail herself of the amendment of this second amended petition made at the close of plaintiff's case for the reason that by filing the second amended petition plaintiff thereby withdrew the cause of action pleaded in the original and first amended petition, which cause of action could not be revived by amendment after the statute of limitations had barred the cause of action that had been withdrawn. The record shows that at the time of the filing of the second amended petition the statute of limitations had barred all grounds for recovery, not theretofore pleaded, which plaintiff might otherwise have had against defendants.

The law is clear that, where the facts incorporated into a petition by way of amendment constitute a cause of action separate and independent from that stated in the original petition, the statute of limitations against the cause of action pleaded in the amendment runs until the filing of such amended petition. *Buerstetta v. Tecumseh Nat. Bank,* 57 Neb. 504, 77 N. W. 1094. This principle of law was restated in *Thurston County v. Farley,* 128 Neb. 756, 260 N. W. 397, as follows: "It is not permissible for a plaintiff to amend a cause of action barred by the statute of limitations by introducing, in substitution for the other, another and a different cause not so barred."

In applying this rule of law in the case of *Thurston County v. Farley, supra,* this court cited and quoted with approval two earlier cases which explained its application, as follows:

"In *Emel v. Standard Oil Co.,* 117 Neb. 418, the original petition alleged that defendant's driver was in the habit of

inviting Emel, an infant, to ride upon defendant's truck; that he invited him on this occasion, and Emel fell from the truck to the ground and was killed. The amendment charged that the driver invited the boy to ride, as was his custom, and, when the child was about to take hold of the truck to mount it, the driver swerved the truck so that the child 'missed his hold on said truck and his footing thereon,' fell and was killed. It was held that the amendment introduced a new cause of action and its allowance was erroneous.

"In *Johnson v. American Smelting & Refining Co.,* 80 Neb. 255, it was held: 'A cause of action alleged in an amended petition, although founded upon the same injury as that described in the original, is a different cause of action, if it is dependent entirely upon different reasons for holding the defendant responsible for the wrong alleged.'"

To sustain defendants' position in this regard, we must assume that the second amended petition does not plead any cause of action which was pleaded in the first two petitions. This we cannot do. While there has been considerable shifting of position by plaintiff in this case, and while the allegations of the second amended petition are confusing and much improper new matter has been added, nevertheless, there has been, we believe, a sufficient continuity of claim made by plaintiff in her several petitions to indicate that the plaintiff has at all times asserted that the defendant Trust Company had been guilty of certain negligence and fraudulent conduct by reason of which plaintiff suffered damages. It follows that the granting of the motion to dismiss the case cannot be sustained upon the ground that the statute of limitations barred all the grounds for recovery pleaded. However, as to any claim against the defendants first asserted in the second amended petition, no recovery can be had because of the bar of the statute of limitations.

The record fails to sustain the allegations made in plaintiff's second amended petition that the Trust Company acted fraudulently in handling this trust. It affirmatively

shows that what was done was done by the Trust Company in good faith and without concealment. Mr. Selby, an officer of the Trust Company, called as a witness by plaintiff, testified, in answer to a question as to whether or not other holders of the bonds were acquainted and familiar with the entire situation relating to the Troth bonds, as follows:

"The bulk of the bondholders in this case were right here in the city or reasonably close, and came in and presented their coupons at the cashier's window, and the books were available to all the bondholders, the correspondence files turned over to them, and the matter was a subject for discussion from time to time as they presented their coupons at the window." The witness further testified that when he referred to "the window" he referred to the window of the accounting room of the Trust Company.

At the trial a list of the bondholders was demanded by the plaintiff and produced. This list showed the address of each bondholder and the amount of the bonds held. It disclosed that fourteen of these bondholders resided in Omaha, two in Council Bluffs, and two in Lincoln, Nebraska. Although these bondholders were easily accessible, plaintiff failed to call a single one of them to refute this testimony, or to show concealment of the transaction complained of, or to show concealment from the stockholders of the defaults made in this loan. Plaintiff also failed to call as a witness any of the bondholders to refute the claim of the Trust Company that it acquired and at all times held the mortgaged property as trustee for the bondholders, although the bondholders in the vicinity of Omaha must have known in what capacity the Trust Company held this property.

The rule announced and applied in the foregoing cases eliminates from consideration here all allegations contained in subsections "d" and "e" of paragraph VI of the second amended petition, as these allegations relate to new matter not pleaded in either of plaintiff's first two petitions. These allegations are hereinbefore set out in this

opinion. But it is not necessary for the Trust Company to rely upon this rule of law to successfully defend against said charges in these subsections, as the record fails to sustain any allegations of conversion, fraud, or any other wrongful conduct charged therein.

No complaint was made of the action of the Trust Company in taking title to and preserving the mortgaged property for the benefit of the stockholders in either of plaintiff's first two petitions. It will, therefore, be unnecessary for us to discuss that action here.

We have carefully examined the record and find no evidence therein of bad faith, concealment or misrepresentation on the part of the Trust Company. In circumstances and under facts very like those involved here, we said in *Fleener v. Omaha Nat. Co.*, 131 Neb. 253, 267 N. W. 462: "We fail to find evidence of bad faith, concealment or misrepresentations on the part of the trustee."

We have not overlooked the point made by the plaintiff relative to the payment by the Trust Company of two of the second mortgage notes. The evidence indicates that these notes were not paid out of the assets of the trust estate. While in the account kept with the trust the Trust Company has credited itself with this item as an advancement, that is merely a matter of bookkeeping which will be up for determination when the Trust Company as trustee has a final accounting with the bondholders. But in no event can that question be raised here, as it was not pleaded in either the first or second amended petitions of plaintiff.

In her briefs plaintiff makes the claim that in this case there is no trust agreement involved but only promissory notes secured by an ordinary mortgage. In this she is in error. The bonds by their terms refer specifically to the mortgage and the provisions of the bonds and the provisions of the mortgage taken together constitute the trust agreement. *Fleener v. Omaha Nat. Co., supra.* This trust agreement indicates that, as to third parties who are bondholders, the Trust Company acts as a trustee for such bond-

holders in all things to be done by the Trust Company under the trust agreement.

The plaintiff alleges that the Trust Company was derelict in failing to institute foreclosure proceedings at the time of the first default in this loan and in failing to liquidate the trust property. There is no merit to these contentions. In considering this claim of plaintiff, all defaults prior to those which occurred in November, 1926, should be eliminated as the first two petitions of plaintiff made no complaint of earlier defaults. By the terms of the mortgage it is provided that, in case of default in the bonds or in the mortgage, then all the bonds and interest thereon secured by the mortgage shall *at the option and upon the declaration of the Trust Company* at once become due and payable, and by the terms of the bonds it is provided that, if default occurs in any of the bonds or in the mortgage, the Trust Company as trustee for the holders of the bonds without hindrance from any one may declare all of the bonds due and payable at the option of the Trust Company as trustee for the holders of the bonds. In *Fleener v. Omaha Nat. Co., supra,* this court held as to a trust agreement giving the trustee less discretion in exercising such an option that the trustee had a right to exercise discretion and was not required to bring foreclosure proceedings immediately upon default. Here the trust agreement specifically provides that the trustee may exercise its option "without * * * hindrance from any one." There is nothing in the trust agreement which requires the Trust Company to speedily liquidate the mortgaged premises. We held in the *Fleener* case: "A trustee cannot be held liable for honest mistakes of business judgment which can be ascertained only from a retrospective point of view." In view of the fact that the defaults we are considering took place in the latter part of 1926 and subsequent thereto; that the Trust Company speedily acquired title for the benefit of the bondholders, thereby saving part of the delay that would have been occasioned by foreclosure proceedings; that at the time there was practically no market for land where

this property is located; and that nearly all the bondholders were being consulted from time to time by the Trust Company as to policy to be pursued in handling this mortgaged property, we do not think it can be fairly said that the Trust Company was negligent in failing to liquidate this property. It follows that the Trust Company is not liable for any subsequent depreciation in the value of the property because of a delay in foreclosing and in liquidating the same.

Plaintiff also contends that the Trust Company should have obtained a personal judgment against the mortgagor at a time when the mortgagor was financially responsible, and that in releasing the mortgagor from personal judgment the Trust Company breached its trust to the damage of plaintiff. There is no complaint made in reference to this matter in the first two petitions of plaintiff. Furthermore, the record fails to show that the plaintiff suffered any damage because of the conduct of the Trust Company in this matter. In the *Fleener* case this court said: "Appellants contend that the trustee should have obtained a personal judgment against the mortgagor and allege that, if the property had been foreclosed at an earlier date, the mortgagor would have been financially able to pay off a deficiency judgment. The record contains no evidence to sustain this allegation and it necessarily fails for want of proof." Under the facts as shown by the record, plaintiff cannot recover upon this ground.

Plaintiff claims that the Trust Company was negligent in failing to notify the plaintiff of certain defaults in the payment of interest on this loan which occurred from time to time between November 1, 1926, and May 1, 1930, and in failing to notify plaintiff that the Trust Company had advanced the money to pay the delinquent interest; and was negligent in failing to notify the plaintiff of certain defaults in the payment of taxes levied from time to time upon the mortgaged property and becoming delinquent during said years; and in failing to notify the plaintiff that the Trust Company had advanced the money to pay

said delinquent taxes; and that the Trust Company was also negligent in failing to disclose to plaintiff the conditions and circumstances which existed relative to the nonpayment of the interest on said bonds and the nonpayment of the taxes assessed against the mortgaged security, and claims to have sustained damages by reason of such negligence.

It is negligence on the part of a trustee to overlook notifying a bondholder or to fail to keep all bondholders promptly advised of matters relative to the trust which would be material in preventing loss to bondholders, but to recover damages for such negligence, the negligence must have caused the bondholder to be damaged. In other words, the rule in this situation is no different from other cases involving negligence. Where negligence is pleaded and proved, before recovery can be had, it must be shown that damage resulted from the negligence to the bondholder. Speculation cannot be indulged in; proof must be adduced.

In the *Fleener* case this court cited and approved the language in *First Trust Co. v. Carlsen,* 129 Neb. 118, 261 N. W. 333, that where material information is withheld from the bondholder "to his injury, the trustee * * * may be required to respond in damages." In the *Fleener* case recovery was sought because the trustee had made advancements of interest and had collected such advancements thereafter from the mortgagor, had made payments of delinquent taxes under circumstances similar to those under which taxes were paid in this case, all without notifying the bondholders, and had failed to commence foreclosure proceedings for nearly five years after the first default in the mortgage. No recovery was permitted in that case because there was no evidence to sustain plaintiff's allegations. We have already pointed out in this opinion that as to whether or not plaintiff suffered damages by reason of the acts of the Trust Company is not to be determined by speculation or conjecture, but must be substantiated by proof.

There is no evidence in the record that, had plaintiff

been advised promptly by the Trust Company of the defaults in the loan and of the acts of the Trust Company in handling the trust property, she could have averted any loss she has sustained by reason of the depreciation in value of the mortgaged property or otherwise. Under the trust agreement an option was given to the Trust Company to declare the entire amount due upon default being made in the loan, and in this option it is expressly provided that the option should be exercised "without * * * hindrance from any one." In this loan there were bonds outstanding of the par value of $75,000 of which plaintiff only owned bonds of the par value of $6,000. In other words, six-seventy-fifths of the issue. In such circumstances she could not alone have forced the trustee to foreclose the mortgage or to liquidate this loan, had she been promptly advised of all that took place.

The great body of the bondholders were fully advised as to this loan and were, so far as the record shows, satisfied with the manner in which the Trust Company was handling the security. It is fanciful to say in these circumstances that plaintiff could have forced foreclosure and liquidation and averted a loss had she been fully and promptly advised by the trustee. A careful examination of the record in this case convinces us that the Trust Company not only acted in good faith but was diligent in seeking to collect the interest from time to time and to liquidate the trust property, but that the condition of the times was such that this could not have been advantageously done. No other bondholders, so far as the record discloses, ever complained of the manner in which this trust was being held and carried out. The plaintiff, for the reasons stated in this opinion, has failed to establish a case for reversal. There being no error in the record, the judgment of the district court is

AFFIRMED.