St. Paul Fire & Marine Insurance Company, appellant, v.
Touche Ross & Company, now known as Deloitte & Touche,
and Deloitte & Touche, appellees.

507 N.W.2d 275

Filed October 29, 1993.    No. S-91-258.

William H. Selde, P. Shawn McCann, and Clark J. Vanskiver, of Sodoro, Daly & Sodoro, for appellant.

John E. North and Thomas C. McGowan, of McGrath, North, Mullin & Kratz, P.C., and John T. Behrendt, Jamie E. Stern, and Mary P. Donlevy, of Gibson, Dunn & Crutcher, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The defendants-appellees, Touche Ross & Company, now known as Deloitte & Touche, and Deloitte & Touche, hereinafter collectively referred to as Touche, successfully demurred to the operative petition filed against it by the plaintiff-appellant, St. Paul Fire & Marine Insurance Company, on the grounds that no cause of action had been stated and, further, that any cause of action which might have existed is time-barred. Following St. Paul's refusal to amend, the district court dismissed the lawsuit. St. Paul asserts, in summary, that in so ruling, the district court erroneously found (1) that the operative petition failed to plead facts imposing upon Touche a duty to exercise due care toward St. Paul and (2) that St. Paul had not seasonably pled fraud as a basis of recovery. We affirm in part, and in part reverse and remand for

further proceedings.

## II. SCOPE OF REVIEW

The scope of our review is established by the rule that in considering a demurrer to a petition, a court must assume that the pleaded facts, as distinguished from any pleaded legal conclusions, are true as alleged and must give the petition the benefit of any reasonable inference arising from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. See, *Gallion v. Woytassek, ante* p. 15, 504 N.W.2d 76 (1993); *Hamilton v. City of Omaha,* 243 Neb. 253, 498 N.W.2d 555 (1993); *LaPan v. Myers,* 241 Neb. 790, 491 N.W.2d 46 (1992).

The foregoing standard of review is implemented through a series of other rules, beginning with the prescript that a narrative of the events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff constitutes a statement of facts sufficient to state a cause of action. See, *Gallion v. Woytassek, supra*; *Hamilton v. City of Omaha, supra*; *Gerken v. Hawkins Constr. Co.*, 243 Neb. 157, 498 N.W.2d 97 (1993).

Moreover, in ruling on a demurrer, the petition is to be construed liberally; if as so construed it states a cause of action, the demurrer is to be overruled. *Matheson v. Stork,* 239 Neb. 547, 477 N.W.2d 156 (1991); *Widga v. Sandell,* 236 Neb. 798, 464 N.W.2d 155 (1991). A general demurrer, that is, one grounded on the failure to state a cause of action, will not lie if from the facts stated in the petition it appears that the plaintiff is entitled to any relief. See *Central Nebraska Public Power and Irrigation District v. Walston,* 140 Neb. 190, 299 N.W. 609 (1941).

On the other hand, if a petition facially shows that a cause of action is barred by the statute of limitations, the plaintiff must allege facts sufficient to avoid the bar of the statute of limitations. *Broekemeier Ford v. Clatanoff,* 240 Neb. 265, 481 N.W.2d 416 (1992); *LaPan v. Myers, supra.* The point at which the statute of limitations commences to run must be determined from the facts of each case; the cause of action accrues and the

statute of limitations begins to run when the aggrieved party has the right to institute and maintain suit, even though such party may be ignorant of the existence of the cause of action. *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983).

### III. FACTS AS ALLEGED

The issues raised require that we review both St. Paul's original and its operative petitions.

### 1. ORIGINAL PETITION

St. Paul filed its original petition on July 14, 1987, and alleged therein that it would suffer damages in the future as the consequence of the audits and related documents Touche negligently produced for its client, Commonwealth Company, Inc., covering the fiscal years ending March 31, 1982, 1983, 1984, and 1985. The pleading further asserted, in summary, that Touche produced these inaccurate and misleading documents to assist its client in obtaining various types of credit and bonds from St. Paul and that St. Paul relied upon them, as was intended that it should, in extending credit and issuing bonds to Commonwealth.

Touche demurred, averring that the petition did not state facts sufficient to constitute a cause of action. The district court agreed, sustained the demurrer, and dismissed St. Paul's petition.

St. Paul appealed, and we, in *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 234 Neb. 789, 452 N.W.2d 746 (1990), determined that because it did not allege that it had been damaged, St. Paul had indeed failed to state a cause of action, but that it should have been granted leave to amend its pleading. We therefore remanded the cause to the district court.

### 2. OPERATIVE PETITION

Subsequently, and after a prior unsuccessful effort at amending its original petition, St. Paul, on August 17, 1990, filed the operative petition which asserts that St. Paul suffered damages because Touche negligently examined and reported on the financial condition of Commonwealth and its subsidiaries for the fiscal year ending March 31, 1981, and the fiscal years it

had specified in its original petition, i.e., 1982, 1983, 1984, and 1985; claims that the various documents Touche prepared were inaccurate and misleading such as to constitute a negligent misrepresentation that Commonwealth was solvent in a significant degree; and avers that Touche made misrepresentations about Commonwealth's financial statements and condition which Touche knew were false when made or were made recklessly without knowledge of their truth, upon which St. Paul reasonably relied.

More specifically, St. Paul avers that the documents Touche produced were represented and certified to have been prepared and examined in accordance with generally accepted auditing standards or accounting principles, when in fact they were not so prepared; that the documents overrecognized the margins from contracts in progress and grossly overstated the net worth position and the net quick position of Commonwealth and its subsidiaries.

St. Paul also alleges that it is the usual standard and customary practice of public accountancy firms dealing with construction contractors such as Commonwealth to prepare audit reports and provide opinions and certificates for obtaining bonds and sureties; that not only did Touche not restrict Commonwealth's ability to distribute such documents, but that Touche met with and communicated directly with St. Paul in providing to Commonwealth on a continuing basis the documents it prepared for the intended purpose of making them available to St. Paul in the underwriting of bonds and extending surety and other credit; that Touche should have known Commonwealth and St. Paul were engaged together in certain bonded and unbonded projects; that Touche was employed by Commonwealth in part to assist it in obtaining surety credit; and that Touche delivered its audit opinions to St. Paul 3 or 4 months after the end of each fiscal year.

St. Paul further asserts that it did not know and could not have known of the inaccurate and misleading nature of the documents until it received the report of another firm of accountants on or about July 15, 1986.

## IV. ANALYSIS

With those allegations in mind, we turn to each of St. Paul's summarized assignments of error.

### 1. NEGLIGENCE ASPECT OF CAUSE

In its first such assignment of error, St. Paul asserts the district court incorrectly determined that as Touche was not in privity with St. Paul, the latter was under no duty to act with due care toward the former.

### (a) Duty

Any analysis of the law regarding an accountant's duty to act with due care toward a nonclient must begin with an examination of *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), which held that because of the lack of privity, a lender relying to its detriment upon inaccurate financial statements did not, in the absence of fraud or reckless misstatement, have a cause of action against the public accounting firm which had prepared them. In declining to relax the requirement of privity, even in the face of evidence that the accounting firm knew its client's balance sheet would be shown to banks, creditors, and stockholders, the *Ultramares Corp.* court observed:

> If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.

*Id.* at 179-80, 174 N.E. at 444.

In so holding, the court distinguished the earlier *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922), decision, which held that a public weigher was liable to the buyer of beans for the amount the buyer overpaid the seller in reliance on the weigher's erroneous certificate of weight. The *Ultramares Corp.* court noted that unlike the situation then before it, the service rendered by the weigher in *Glanzer* was performed primarily for the benefit of the third-party buyer and only

incidentally for the seller; in fact, the seller had directed the weigher to provide a copy of its certificate to the buyer.

Some courts continue to hold that in the absence of fraud, the lack of privity between a third party and an accountant precludes the imposition of liability on the accountant. See, *Stephens Industries, Inc. v. Haskins and Sells*, 438 F.2d 357 (10th Cir. 1971); *MacNerland v. Barnes*, 129 Ga. App. 367, 199 S.E.2d 564 (1973); *State Street Trust Co. v. Ernst*, 278 N.Y. 104, 15 N.E.2d 416 (1938), *reh'g denied* 278 N.Y. 704, 16 N.E.2d 851.

Other courts, however, have found an accountant liable to third parties in the absence of privity under the circumstances described in the Restatement (Second) of Torts § 552 (1977). The Restatement makes an accountant liable if the third party suffering the loss is a "person or one of a limited group of persons for whose benefit and guidance [the accountant] intends to supply the information or knows that the recipient intends to supply it," *id*. at 127, and the third party does rely "upon it in a transaction that [the accountant] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction," *id*. Cases adopting this standard include *Spherex, Inc. v. Alexander Grant & Co.*, 122 N.H. 898, 451 A.2d 1308 (1982), and *Inv. Co. v. C. & L.*, 70 Ohio St. 2d 154; 436 N.E.2d 212 (1982).

Still other courts have extended an accountant's liability for negligence to those who might reasonably have been foreseen as relying upon the accountant's work product. *Touche Ross v. Commercial Union Ins.*, 514 So. 2d 315 (Miss. 1987); *Rosenblum v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983); *Citizens State Bank v. Timm, Schmidt & Co.*, 113 Wis. 2d 376, 335 N.W.2d 361 (1983).

And at least one court has ruled that an accountant's liability to third persons is determined by the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of

preventing future harm. *Biakanja v. Irving*, 49 Cal. 2d 647, 320 P.2d 16 (1958).

We recently and for the first time confronted the issue in *Citizens Nat. Bank of Wisner v. Kennedy & Coe*, 232 Neb. 477, 441 N.W.2d 180 (1989). Therein, the defendant certified public accountants had prepared financial statements for a mutual customer of the three plaintiff banks. After reviewing the statements, the banks participated in making a loan to the customer. After the customer defaulted, the banks sued the accountants, claiming not only that the accountants had been negligent, but that they had made fraudulent misrepresentations as well. Concluding that the trial court had assigned to the banks an improper burden of proof on their fraud theory, we reversed the judgment which had been entered in favor of the accountants and remanded the cause for a new trial. In the course of doing so, we extruded from the prescript that a lawyer's duty to his or her client "does not extend to third parties absent facts establishing a duty to them" the rule that "an accountant's duty of reasonable care is to his [or her] client and generally does not extend to third parties absent fraud or other facts establishing a duty to them." *Id.* at 480, 441 N.W.2d at 182. Thus, *Kennedy & Coe* establishes that even in the absence of fraud, there exist circumstances under which an accountant who negligently performs a service for the accountant's client may become liable to a third party.

What the limits of those circumstances may prove to be will necessarily be established on a case-by-case basis. It is sufficient to note that the allegations at hand state a negligence cause of action in favor of St. Paul against Touche under the theories that Touche negligently performed its services and made negligent misrepresentations. Particularly significant are the allegations that despite its representation to the contrary, Touche did not perform in accordance with generally accepted accounting standards, that Touche met and communicated directly with St. Paul and made Touche's products available to the former for its use in dealing with Commonwealth, and that Touche intended that St. Paul rely on the documents Touche prepared for Commonwealth.

As held by the Florida Supreme Court in *First Fla. Bank v.*

*Max Mitchell & Co.*, 558 So. 2d 9 (Fla. 1990), when an accountant fails to exercise reasonable and ordinary care in preparing financial statements for its client and personally delivers and presents those statements to a third party to induce the third party to loan to or invest in the client, the accountant is liable to the third party in negligence. That is to say, a duty arises by virtue of a contract implied from the conduct of the parties. See *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991).

### (b) Timeliness of Negligence Theory

The question at this point, then, is whether St. Paul seasonably pled its negligence allegations. Neb. Rev. Stat. § 25-222 (Reissue 1989) provides, in pertinent part:

> Any action to recover damages based on alleged professional negligence . . . shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier . . . .

In *Lincoln Grain v. Coopers & Lybrand*, 215 Neb. 289, 338 N.W.2d 594 (1983), we held that the 2-year period of limitations specified in § 25-222 applied to a firm of accountants which were alleged to have been negligent in the preparation of certain audits.

The task thus becomes one of resolving whether the negligence allegations became effective when St. Paul first pled them in its operative petition, which was filed on August 17, 1990, or when St. Paul filed its original petition on July 14, 1987.

The general rule is that for limitations purposes, an amended pleading in the same cause of action ordinarily relates back to the original pleading. See, *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988); *Abbott v. Abbott*, 185

Neb. 177, 174 N.W.2d 335 (1970), *appeal after remand* 188 Neb. 61, 195 N.W.2d 204 (1972).

While traditionally a statute of limitations begins to run as soon as the action accrues, and a cause of action in tort accrues as soon as the act or omission occurs, *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984), § 25-222 permits commencement of the action within 1 year from discovery if discovery could not reasonably have occurred sooner.

Discovery, as applied to the statute of limitations, occurs when one knows of the existence of an injury or damage and not when he or she has a legal right to seek redress in court. *Norfolk Iron & Metal v. Behnke*, 230 Neb. 414, 432 N.W.2d 18 (1988); *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988). Under the discovery principle, discovery occurs when there has been discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. *Board of Regents v. Lueder Constr. Co.*, 230 Neb. 686, 433 N.W.2d 485 (1988); *Norfolk Iron & Metal v. Behnke, supra*.

In this regard Touche contends, in essence, that St. Paul, in alleging it did not know and could not have known of Commonwealth's true condition until it received another accounting firm's report, had pled a mere conclusion rather than facts excusing its failure to discover the true situation despite the exercise of diligence. But the cases it cites in support of that position are factually dissimilar from the situation before us. See, *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849 (1985) (record replete with facts negating plaintiff's assertion that statute of limitations should be tolled because he lacked knowledge or transactions were fraudulently concealed); *Mangan v. Landen*, 219 Neb. 643, 365 N.W.2d 453 (1985) (indemnitee's cause of action against indemnitor on basis of allegation that indemnity agreement should have included indemnity provision accrued as of date of execution; statute of limitations not tolled where indemnitee could have discovered at once upon reading that contract did not include indemnity provision); *S.I.D. No. 145 v. Nye*, 216 Neb. 354, 343 N.W.2d

753 (1984) (legal malpractice action against attorney for failure to file annexation certificate for certain real estate owned by plaintiff barred by statute of limitations because petition did not show excuse for failure to commence action for 17 years); *George P. Rose Sodding & Grading Co. v. Dennis*, 195 Neb. 221, 237 N.W.2d 418 (1976) (statute of limitations not tolled by plaintiff's allegations it submitted bills for partial payment to defendant governmental subdivision and was advised there were no funds in treasury for payment but would later be tax levy and assessment to raise such funds).

In *Lee v. Brodbeck*, 196 Neb. 393, 243 N.W.2d 331 (1976), the plaintiffs alleged that at the time they were considering the purchase of a farm through the defendant broker, the defendant promised and assured them there would be no difficulty in selling their own farm for $63,000. The plaintiffs then brought an action against the defendant for fraud after the statute of limitations had run when their farm sold for $34,000. The court held that the plaintiffs' allegation that the fraud was not discovered until the sale of the farm was confirmed by a court was sufficient to toll the statute of limitations, subject to later proof at trial.

Here, in addition to alleging that it did not and could not have earlier known of Commonwealth's true condition, St. Paul also alleges that Touche prepared documents other than in accordance with generally accepted auditing standards, that Touche overrecognized the margins from contracts in progress, that Touche grossly overstated the net worth and net quick positions of Commonwealth, and that St. Paul accepted Touche's false certifications that Commonwealth's financial statements were prepared in accordance with generally accepted auditing standards and accounting principles and that the statements fairly and accurately represented Commonwealth's financial condition. Under those circumstances, it was reasonable for St. Paul not to have discovered Touche's alleged negligence until the former received the other accounting firm's report.

It therefore follows that except as to the fiscal year ending March 31, 1981, about which no mention was made until the filing of the operative petition, the issue of discovery was

properly pled and is to be determined by whatever facts may be established by the evidence.

## 2. FRAUD ASPECT OF CAUSE

In its second summarized assignment of error, St. Paul avers that the district court mistakenly determined that the fraud claim was not timely pled.

### (a) Applicable Period of Limitations

St. Paul argues that the period of limitations applicable to its fraud theory is found in Neb. Rev. Stat. § 25-207 (Reissue 1989), which reads, in pertinent part: "The following actions can only be brought within four years: . . . an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud . . . ." But as we have already noted in part IV(1)(b) above, § 25-222 sets a discovery-modified 2-year period of limitations for actions based on professional negligence (and for professional breach of warranty). A third statute, Neb. Rev. Stat. § 25-208 (Reissue 1989), provides, in relevant part: "The following actions can only be brought within the periods herein stated: . . . within two years, an action for malpractice which is not otherwise specifically limited by statute."

It appears that to date we have used the word "malpractice" and the concept of "professional negligence" interchangeably. See, *Staman v. Yeager & Yeager*, 238 Neb. 133, 469 N.W.2d 532 (1991) (to recover against attorney in professional malpractice action, plaintiff must prove attorney's employment and neglect of reasonable duty and that duty was proximate cause of loss to client); *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 466 N.W.2d 499 (1991) (it is necessary to establish that attorney-client relationship existed with respect to act or omission upon which legal malpractice claim based); *Stansbery v. Schroeder*, 226 Neb. 492, 412 N.W.2d 447 (1987); *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983).

With the exception of *S.I.D. No. 145 v. Nye*, 216 Neb. 354, 343 N.W.2d 753 (1984), which applied both §§ 25-208 and 25-222 to a lawyer failing to seasonably file an annexation document, § 25-208 has been applied only to medical doctors.

*Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989); *Taylor v. Karrer*, 196 Neb. 581, 244 N.W.2d 201 (1976); *Toman v. Creighton Memorial St. Josephs Hosp., Inc.*, 191 Neb. 751, 217 N.W.2d 484 (1974); *Acker v. Sorensen*, 183 Neb. 866, 165 N.W.2d 74 (1969); *Stacey v. Pantano*, 177 Neb. 694, 131 N.W.2d 163 (1964); *Spath v. Morrow*, 174 Neb. 38, 115 N.W.2d 581 (1962).

But on further thought, it seems relatively clear that by referring to "an action for malpractice which is not otherwise specifically limited by statute," § 25-208 contemplates a broader meaning of the term "malpractice" than does the concept of "professional negligence" contemplated by § 25-222. Thus, because we are here concerned with fraud, not negligence or breach of warranty, the governing period of limitations must be as set forth in either § 25-207 (fraud) or § 25-208 (malpractice).

Based on the differences in proof and evidence, some courts distinguish between negligence and fraud causes of action for purposes of the statutes of limitations. See, *Simcuski v Saeli*, 44 N.Y.2d 442, 377 N.E.2d 713, 406 N.Y.S.2d 259 (1978) (intentional tort separate from malpractice claim, and plaintiff entitled to bring action within 6-year statute of limitations for fraud actions); *Brownell v Garber*, 199 Mich. App. 519, 503 N.W.2d 81 (1993) (fraud distinct from malpractice); *Umphrey v. Sprinkel*, 106 Idaho 700, 682 P.2d 1247 (1983) (gist of malpractice action is negligence); *Stackhouse v. Emerson*, 611 So. 2d 1365 (Fla. App. 1993) (not every wrongful act committed by health care provider amounts to medical malpractice); *Hoover v. Gregory*, 835 S.W.2d 668 (Tex. App. 1992) (appellant's fraud cause of action governed by different statute of limitations than cause of action for malpractice); *Krause v. Farber*, 379 N.W.2d 93 (Minn. App. 1985) (intentional misrepresentation by physician governed by statute of limitations for intentional torts); *Gumm v. Owen*, 815 S.W.2d 259 (Tex. App. 1991) (action for fraud governed by separate statute for malpractice). Contra, *Benefield v. F. Hood Craddock Clinic*, 456 So. 2d 52 (Ala. 1984) (form of action not decisive test in actions against physicians, surgeons, and dentists for malpractice; decisive test is substance of action);

*Hibbett v. Cincinnati*, 4 Ohio App. 3d 128, 446 N.E.2d 832 (1982) (applicable statute of limitations determined not from form of pleading but from gist of complaint).

Nonetheless, in *Stacey v. Pantano, supra*, this court rejected an attempt to separate the physician's fraudulent concealment of the cause and nature of his patient's condition from the physician's negligence and held that both claims were governed by the 2-year malpractice limitation set forth in § 25-208. In so ruling, the *Stacey* court reasoned that as the physician's statements were a necessary part of his treatment and consultation with the patient, the false statements were not severable from his negligence.

This court has refused to separate various aspects of a professional relationship for limitations purposes in other cases as well. See, *Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989) (in applying 2-year malpractice statute of limitations instead of 4-year statute for ordinary negligence, court pointed to physician-patient relationship which existed between parties and which was stimulus for examination alleged to be negligently performed); *Jones v. Malloy*, 226 Neb. 559, 412 N.W.2d 837 (1987) (issue of informed consent governed by 2-year statute of limitations for malpractice and not 1-year battery statute of limitations); *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982) (allegation by patient that physician affirmatively misrepresented effect of x-ray treatment did not take case out of professional negligence period of limitations).

We thus decline St. Paul's invitation to now change the long-settled law of this state by separating a single professional relationship into various parts and applying to one part of that relationship the general fraud period of limitations found in § 25-207 and to another part the malpractice period of limitations found in § 25-208. See, also, *Stumpf v. Albracht*, 982 F.2d 275 (8th Cir. 1992), which, relying on *Stacey v. Pantano*, 177 Neb. 694, 131 N.W.2d 163 (1964), held that a claim of fraud against a debtor's former attorney for allegedly advising debtors to conceal assets belonging to the bankruptcy estate was governed by the 2-year periods of limitations found in §§ 25-208 and 25-222.

While § 25-208 does not by its terms provide for a period of

discovery, in *Spath v. Morrow*, 174 Neb. 38, 115 N.W.2d 581 (1962), we held that a cause of action for malpractice against a physician who failed to remove a foreign object did not accrue until the patient discovered, or in the exercise of reasonable diligence should have discovered, the presence of the object. Thus, the discovery doctrine discussed with regard to § 25-222 in part IV(1)(b) of this opinion applies as well to the period of limitations set forth in § 25-208.

(b) Timeliness of Fraud Theory

Nonetheless, Touche urges that the fraud theory of recovery was not seasonably pled because it was raised for the first time in the operative petition, which was filed more than 4 years after St. Paul's discovery of the alleged fraud. The question thus is whether St. Paul's fraud allegations relate back to the original petition.

In arguing that they do not relate back, Touche in essence argues that fraud is a different cause of action from negligence. But a cause of action consists of the fact or facts which give one a right to judicial relief against another. Holding that a theory of recovery is not itself a cause of action, this court, in *Kohler v. Ford Motor Co.*, 187 Neb. 428, 191 N.W.2d 601 (1971), determined that a claim for recovery under a theory of strict liability was not a cause of action different from claims of recovery under theories of res ipsa loquitur or breach of express or implied warranty. Therefore, the amendment adding the strict liability theory related back to the original pleading for limitations purposes. The *Kohler* court noted that the "general facts upon which the right to recover was based are the same." *Id.* at 432, 191 N.W.2d at 605. See, also, *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988) (alternative theories of recovery on same general set of facts not ordinarily separate causes of action for purposes of running of statute of limitations); *Knoell Constr. Co., Inc. v. Hanson*, 210 Neb. 628, 316 N.W.2d 321 (1982).

In *Forker Solar, Inc. v. Knoblauch*, 224 Neb. 143, 396 N.W.2d 273 (1986), we held that fraud alleged for the first time in an amended petition related back to the original petition where the alleged misrepresentations were nearly identical to

those alleged in the original petition. Therein, the plaintiff in his initial petition alleged securities violations, breach of contract, and fraud violations against a company called SMC, asserting that the two defendants had made misrepresentations to him. In his amended petition the plaintiff omitted the securities and breach of contract violations and alleged solely that the misrepresentations made by the defendants who acted " 'in the guise of [SMC]' " induced the plaintiff to rely on their representations. *Id.* at 147, 396 N.W.2d at 277. The *Forker Solar, Inc.* court ruled that although the plaintiff had modified its theory of recovery, it did not state a new and independent cause of action. The court pointed out the nearly identical misrepresentations alleged by the plaintiff and that both petitions alleged that these misrepresentations induced the plaintiff to enter into the first agreement. See, also, *Abbott v. Abbott*, 185 Neb. 177, 174 N.W.2d 335 (1970), *appeal after remand* 188 Neb. 61, 195 N.W.2d 204 (1972) (stepson's second amended petition filed more than 4 years after the distribution of father's estate alleging promissory fraud and undue influence related back to petition and first amended petition in which he alleged the will, family settlement, oral promises by member of the family, and subsequent nonperformance of those promises entitled him to distribution).

Touche's reliance on two of our cases for its proposition that a cause of action for fraud does not relate back to one for negligence is misplaced. In *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849 (1985), and *Streight v. First Trust Co.*, 133 Neb. 340, 275 N.W. 278 (1937), we wrote that facts incorporated into a petition by way of amendment constitute a cause of action separate and independent from that stated in the original petition, and the statute of limitations against the cause of action pled in the amendment runs until the filing of such amended petition. However, in both cases, the amended petition alleged new facts which, in and of themselves, constituted a separate cause of action.

In *League*, the plaintiff had asserted that the corporate president-majority shareholder breached his fiduciary duty with respect to certain corporate transactions, including a claim that the corporation had paid excessive compensation to the

corporate president during a period of 2 years. In his subsequent amended petition, the plaintiff added a third year, during which, he alleged, the corporation overpaid the corporate president. Obviously, the addition of the third year could not relate back to the earlier pleading, for to that extent the amended pleading relied on entirely different reasons for relief. *Muenchau v. Swarts*, 170 Neb. 209, 102 N.W.2d 129 (1960). Similarly in *Streight*, claims by a first mortgage bond purchaser against a trust company that the trust company took title to and preserved the mortgaged property for the benefit of its stockholders did not relate back to earlier claims of negligence and fraud asserted in the plaintiff's first two petitions against the trust company for permitting assessed taxes to become delinquent and permitting the mortgage to default on an interest payment. However, there existed enough continuity of the other claims made by the plaintiff in her prior petitions as to relate back to the earlier pleadings and thus to toll the statute of limitations raised by the trust company.

Therefore, except as to the fiscal year 1981, which was not mentioned in the original petition, St. Paul's fraud allegations relate back to July 14, 1987, the date it filed its original petition.

## V. JUDGMENT

The record sustaining St. Paul's first summarized assignment of error and, in part, sustaining St. Paul's second summarized assignment of error, the judgment of the district court is affirmed in part and in part reversed, and the cause remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.