DANIEL R. LEWIS, APPELLANT, V. UNION PACIFIC RAILROAD
COMPANY, APPELLEE.
497 N.W.2d 33

Filed March 12, 1993.    No. S-90-439.

Thomas F. Hoarty, Jr., of McGowan & Hoarty, for appellant.

Gayla L. Fletcher for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and HOWARD, D.J., Retired.

HOWARD, D.J., Retired.

The demurrer to plaintiff's second amended petition was sustained, plaintiff elected to stand on that petition, the petition was dismissed, and this appeal followed.

When testing whether a petition which was challenged by a demurrer stated a cause of action, an appellate court is required to accept as true all the facts which were well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom; it does not, however, accept as true the conclusions of the pleader. *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992).

Plaintiff, Daniel R. Lewis, basing his action on the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. (1988), alleged in his first cause of action as follows: He was a long-time employee of the defendant, Union Pacific Railroad Company, in the contracts and real estate department. In about October 1987, he was diagnosed as suffering from duodenitis, colitis, and gastritis, and this was reported to defendant's medical department. From that time until November 1988, he was off work on medical leaves of absence for considerable periods of time in an effort to bring his medical problems under control. His treatment included medication, stress management sessions, and medically approved leaves of absence "from his stress-producing job with the Defendant." Returning to work from a 5-month absence, he was presented "with an enormous stack of paperwork" which had accumulated in his absence. He began performing this work, and within a few weeks he began experiencing stomach problems again. In January and February 1989, his new supervisor, Barbara Zandbergen, repeatedly criticized him for not completing more work, and she urged him to work more hours, including overtime and evenings. In May 1989, his supervisor, being aware of his

history of stomach disorders and "the fact that job stress caused these stomach disorders," said that she was placing him on 60 days' probation for not devoting enough time to his job and that he would be fired if he did not produce more work. As a result, plaintiff attempted to work more than 40 hours a week, including many 12-hour days, "which resulted in his suffering severe lower abdominal pains and rectal bleeding on the job." He was directed by his physicians to stay off work for about 2 months in the summer of 1989. When he returned to work in August 1989, he was notified that he would be fired September 15, 1989. As a direct result of the acts of defendant, he suffered a peptic ulcer and colitis, and his general health and strength have been permanently impaired. Defendant negligently failed to provide him with a safe place to work and "caused, permitted and allowed" him to perform stressful work for a prolonged period of time when defendant knew or should have known that plaintiff would be injured thereby. Plaintiff's second cause of action, also brought under FELA, alleged that plaintiff's supervisor, being fully informed of plaintiff's medical condition and the "stress related injuries from which Plaintiff suffered," required him to work overtime, knowing this would cause "a relapse of his previous injuries," and also alleged that the supervisor's conduct was outside the "bounds of reasonable supervisory practice" and "constituted the intentional infliction of emotional distress."

FELA provides in § 51 that railroads are liable to employees for "injury" while employed "resulting in whole or in part from the negligence of any of the officers, agents, or employees."

It is now generally held that the act includes intentional torts. See, *Lancaster v. Norfolk and Western Ry. Co.*, 773 F.2d 807 (7th Cir. 1985), *cert. denied* 480 U.S. 945, 107 S. Ct. 1602, 94 L. Ed. 2d 788 (1987); *Slaughter v. Atlantic Coast Line Railroad Company*, 302 F.2d 912 (D.C. Cir. 1962); *Masiello v. Metro-North Commuter RR.*, 748 F. Supp. 199 (S.D.N.Y. 1990). The U.S. Court of Appeals for the Sixth Circuit appears to be alone in its refusal to recognize a claim based on injuries suffered as a result of intentional acts of the employer. See *Adkins v. Seaboard System R.R.*, 821 F.2d 340 (6th Cir. 1987), *cert. denied* 484 U.S. 963, 108 S. Ct. 452, 98 L. Ed. 2d 392. In

*Naidoo v. Union Pacific Railroad*, 224 Neb. 853, 402 N.W.2d 653 (1987), the Nebraska Supreme Court acknowledged that FELA has been interpreted to reach at least some intentional torts. The act supersedes a state's common and statutory law, even though an employee seeks relief in a state court. *Chapman v. Union Pacific Railroad*, 237 Neb. 617, 467 N.W.2d 388 (1991). In *Urie v. Thompson*, 337 U.S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949), the U.S. Supreme Court examined FELA in reference to negligence determined by Missouri law and stated:

> [FELA] does not define negligence, leaving that question to be determined, as the Missouri Supreme Court said [on the first appeal of this case], "by the common law principles as established and applied in the federal courts." 352 Mo. at 218. *Erie R. Co. v. Tompkins*, 304 U. S. 64, has no application. What constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs. Hence the Missouri Supreme Court's decision on the first appeal, that the complaint did not state a cause of action for negligence, is subject to our independent review and is not to be taken as governed conclusively by the state court decisions which alone were cited in support of the determination.

337 U.S. at 174. By extension, the *Urie* rule applies to intentional acts.

In *Naidoo v. Union Pacific Railroad*, 224 Neb. at 858, 402 N.W.2d at 657, this court, denying FELA relief, stated that "[t]he clear weight of authority is that only damages for physical injury may be recovered under the FELA." (Emphasis omitted.) Plaintiff seeks to distinguish his case by pointing to a resultant peptic ulcer and colitis with rectal bleeding on the job. There is federal authority for such a distinction. In *Masiello v. Metro-North Commuter RR., supra*, the plaintiff alleged that her emotional injuries resulted in ulcers, which the court ruled met a physical injury requirement. The court's decision in *Teague v. National R.R. Passenger Corp.*, 708 F. Supp. 1344 (D. Mass. 1989), would allow a plaintiff to recover for mental

distress that was accompanied by physical manifestations. There, a pattern of harassment resulted in the plaintiff's psychological and physical injuries which included ulcers, duodenitis, and chest pain. But we focus here on the question whether plaintiff alleges acts of the defendant which fasten liability, assuming damages for which relief is available.

Federal decisions which we believe are most apposite in respect to the employer's conduct and the injury alleged take into account the needful, traditional, and accepted practices in the employer-employee arena, including the employer's right to lay out the work to be done, to demand its performance, and to criticize. In *Holliday v. Consolidated Rail Corp.*, 914 F.2d 421 (3d Cir. 1990), *cert. denied* 498 U.S. 1090, 111 S. Ct. 970, 112 L. Ed. 2d 1057 (1991), the plaintiff claimed that he was inadequately trained as a conductor and that he suffered stress with resultant physical manifestations and involuntary rectal discharge. The court stated:

> We also acknowledge that Holliday's condition was not solely emotional, as he suffered from physical consequences attributable to his emotional state, but that circumstance does not alter our analysis. . . . The physical manifestations, though obviously germane to the assessment of Holliday's condition, have no bearing on the character of Conrail's allegedly tortious activity.

914 F.2d at 425. Denying relief, the court concluded:

> Conrail's allegedly tortious activity in putting him in that position was simply an ordinary management decision and was not of such a character that his emotional reaction and related physical consequences constituted an "injury" compensable under the FELA. . . .
>
> . . . .
>
> . . . We are encouraged to reach our result by the realization that if we hold that a railroad employee demonstrating some possible negligence with psychological consequences will always present a jury question in a FELA action, the most attenuated claims could be advanced. Indeed, a routine management decision not resulting in an accident could give rise to a claim by an employee for psychological injuries.

914 F.2d at 425-27.

The court in *Lancaster v. Norfolk and Western Ry. Co.*, 773 F.2d 807 (7th Cir. 1985), *cert. denied* 480 U.S. 945, 107 S. Ct. 1602, 94 L. Ed. 2d 788 (1987), commenting on a case in which employees claimed to have suffered physical and mental strain because the railroad had not given them enough help to be able to do their jobs adequately, said: "But the complaint was not that working conditions were unsafe; it was that clerical employees had been given too much—not too dangerous —work to do. That is not our idea of an FELA claim . . . ." 773 F.2d at 813.

In *Kraus v. Consolidated Rail Corp.*, 723 F. Supp. 1073 (E.D. Pa. 1989), a dispatcher claimed physical and mental distress disorders, having been admitted to the hospital with chest pains after his territory was doubled. Another dispatcher suffered a heart attack, blaming increased workload, a chaotic condition, and disputes with his supervisor; a third acquired ulcers while working hard after cuts in manpower; and a fourth blamed a reduction in force and disciplinary actions for his necessary absenteeism from the stressful workplace. The court denied these claims as "not the type of problem intended to be dealt with by the FELA." 723 F. Supp. at 1090.

Plaintiff's first cause of action did not escape the rationale of these decisions. The allegations disclosed an extraordinary consideration of plaintiff's problems by defendant. Plaintiff, having returned to work after lengthy leaves of absence, was presumably fit to undertake it. The allegation that his supervisor knew or should have known that requiring him to work, or to work hard, would bring about injuries to him attributes impossible medical prescience to her. The petition was not well pled in this respect, and the first cause of action did not state a claim for relief under FELA.

The second cause of action was for "the intentional infliction of emotional distress." In *Atchison T. & S. F. R. Co. v. Buell*, 480 U.S. 557, 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987), the U.S. Supreme Court stated:

> The question whether "emotional injury" is cognizable under the FELA is not necessarily an abstract point of law or a pure question of statutory construction that might be

answerable without exacting scrutiny of the facts of the case. Assuming, as we have, that FELA jurisprudence gleans guidance from common-law development, see *Urie v. Thomspon*, 337 U. S., at 174, whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity. For example, while most States now recognize a tort of intentional infliction of emotional distress, they vary in the degree of intent required to establish liability, and the level of physical manifestation of the emotional injury required to support recovery. Moreover, some States consider the context and the relationship between the parties significant, placing special emphasis on the workplace. In addition, although many States have now recognized a tort of negligent infliction of emotional distress, they too vary in the degree of objective symptomatology the victim must demonstrate. These issues are only exemplary of the doctrinal divergences in this area. In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive "yes" or "no" answer. As in other areas of law, broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand.

480 U.S. at 568-70.

In recent cases, federal courts have found emotional injuries cognizable under FELA. The court in *Taylor v. Burlington Northern R. Co.*, 787 F.2d 1309 (9th Cir. 1986), held that an injured worker can recover for purely emotional injuries. In *Plaisance v. Texaco, Inc.*, 937 F.2d 1004 (5th Cir. 1991), the plaintiff, a tugboat captain, suffered a significant emotional injury after an explosion on a barge being towed by his tugboat. The plaintiff had not been physically injured, but he did suffer from posttraumatic stress disorder and depression, and the court recognized such an action under FELA for purely emotional reasons.

In *Masiello v. Metro-North Commuter RR.*, 748 F. Supp. 199 (S.D.N.Y. 1990), the plaintiff allegedly suffered anxiety, depression, and an ulcer because of sexual harassment at her

place of employment. The court permitted the plaintiff to proceed under FELA. In *Amendola v. Kansas City Southern Ry. Co.*, 699 F. Supp. 1401 (W.D. Mo. 1988), the court pointed to a clear majority view upholding emotional distress claims under FELA, at least if physical harm is present.

Research discloses no distinct federal common law on what constitutes a claim for intentional infliction of emotional distress, but two federal courts have gleaned guidance from the states in which they sit. See, *Outten v. National R.R. Passenger Corp.*, 928 F.2d 74 (3d Cir. 1991) (court applied Pennsylvania's lenient bystander law to FELA claim of negligent infliction of emotional injuries, citing FELA's broad, remedial purpose announced in *Atchison T. & S. F. R. Co. v. Buell, supra*); *Gillman v. Burlington Northern R. Co.*, 878 F.2d 1020 (7th Cir. 1989) (affirming lower court's dismissal of FELA claim for failure to state a claim of negligent infliction of emotional distress under Illinois law).

In considering the first cause of action, we hold that it was not well pled in respect to the allegation that defendant's supervisor knew or should have known that her instructions would cause harm to plaintiff, and this holding applies to the second cause of action, which, stripped of its conclusions, amounted to no more than a claim that excessive work was given to plaintiff. It did not allege an intent to do harm to plaintiff, a necessary ingredient of the claimed "intentional infliction of emotional distress," and thus it failed to state a separate cause of action. The decision of the district court was correct and must be affirmed.

AFFIRMED.