SAUNDRA HAMILTON, APPELLANT, V. CITY OF OMAHA, DOUGLAS
COUNTY, NEBRASKA, A MUNICIPAL CORPORATION, AND R. GREEN,
APPELLEES.
498 N.W.2d 555

Filed April 16, 1993.    No. S-90-679.

Robert V. Broom, of Broom, Johnson, Fahey & Clarkson, for appellant.

Herbert M. Fitle, Omaha City Attorney, James E. Fellows, and Thomas O. Mumgaard for appellees.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., MERRITT, D.J., and COLWELL, D.J., Retired.

HASTINGS, C.J.
Plaintiff, Saundra Hamilton, appeals the judgment of the district court, which dismissed her cause of action after having sustained the demurrer of the defendants, City of Omaha and police officer R. Green. The plaintiff elected not to plead further. We affirm.

Plaintiff's action was brought pursuant to the provisions of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991). In her petition, the plaintiff alleged that on the evening of January 14, 1988, she was physically assaulted by her former husband, Jeffrey Hamilton. She then left the scene of that assault and returned to her home. Two police officers arrived at the scene of the assault and were advised by witnesses as to the identity of the plaintiff and her attacker.

Continuing, her petition alleged that within 20 minutes of the plaintiff's arrival at home, Jeffrey Hamilton arrived and

harassed and threatened her. The plaintiff immediately called the police, and Officer Green arrived just after Jeffrey Hamilton departed. The plaintiff explained what had happened and requested a "special watch number" because she feared for her safety. According to the petition, Officer Green stated that she would not need a special watch number and that he would be on duty and in the immediate area to protect her.

The plaintiff further alleged that she stayed at her residence in reliance on Officer Green's assurance, but that within 15 to 20 minutes of Officer Green's departure, Jeffrey Hamilton returned, kicked in the door, and entered her home. The plaintiff immediately called 911, reported the attack in progress, and attempted to escape through another door when she was assaulted by Jeffrey Hamilton. The plaintiff ran outside and across the street, trying to get help at a neighbor's home. Jeffrey Hamilton caught her and struck her on the left ankle, above the left knee, and on the left thigh and left arm with a tire iron. She was finally dragged down the stairs by Jeffrey Hamilton and fell onto the concrete. Plaintiff alleged that as a result of that assault she suffered bodily injuries and sought money damages.

The allegations concerning the negligence claimed on the part of the defendants were as follows:

8. Defendant R. Green was negligent in failing, refusing and neglecting to protect Plaintiff from her assailant after having affirmatively assured her that he would protect her and in failing, refusing and neglecting to be available to provide protection to Plaintiff after having assured her he would provide protection. Said negligence is imputable to the City of Omaha as Defendant R. Green's employer. Defendant City of Omaha was further negligent in failure to devise and implement adequate and effective training of a police officer regarding appropriate and adequate treatment of domestic assaults as well as failing to implement and enforce adequate response procedures to such domestic assaults and threats.

Defendants demurred on the ground that the petition failed to state a cause of action and that the court has no jurisdiction over the subject matter of the action alleged because it falls

within the scope of § 13-910(2) (discretionary function or duty on the part of a political subdivision or its employees).

On appeal, plaintiff assigns as error that the court sustained the demurrer, finding that her petition failed to allege facts sufficient to constitute a cause of action and finding that the acts of the police officer were excluded under the Nebraska Political Subdivisions Tort Claims Act as discretionary acts. The district court did not designate upon which basis the demurrer was sustained.

Although the plaintiff alleged that the city was negligent in failing to devise and implement adequate and effective training in regard to domestic assaults, she does not assign as error or argue in her briefs that the district court erred in not considering that allegation. This court will only address issues that are both assigned as error and discussed in the brief of the party alleging prejudicial error. *State v. Vermuele*, 241 Neb. 923, 492 N.W.2d 24 (1992); *Maack v. School Dist. of Lincoln*, 241 Neb. 847, 491 N.W.2d 341 (1992).

The plaintiff contends, however, that the conduct of the individual police officer alleged did not involve a discretionary decision within the meaning of § 13-910(2). In discussing the distinction between discretionary and operational functions in the context of a similar provision in the State Tort Claims Act, this court noted that:

> Performance of or failure to perform a discretionary function or duty cannot be the basis for liability under the State Tort Claims Act. . . .
>
> . . . .
>
> However, the discretionary function or duty exemption in the State Tort Claims Act extends only to the basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions. . . . In other words, the State is liable for negligence of its employees at the operational level, where there is no room for policy judgment.

(Citations omitted.) *Wickersham v. State*, 218 Neb. 175, 180, 354 N.W.2d 134, 138-39 (1984). The same rule would apply to the Political Subdivisions Tort Claims Act.

The purpose for this distinction was discussed in

*Chambers-Castanes v. King County*, 100 Wash. 2d 275, 669 P.2d 451 (1983), in which the plaintiffs alleged that a county sheriff was liable for failure to respond in a timely manner to their call for assistance. The Supreme Court of Washington observed:

> A governmental entity's exercise of discretionary acts at a basic policy level is immune from suit, whereas the exercise of discretionary acts at an operational level is not. . . . The purpose of such an exception is to preserve the integrity of our system of government by ensuring that each coordinate branch of government may freely make basic policy decisions.
>
> . . . .
>
> A simple decision whether to dispatch an officer to the scene of a crime or to investigate a crime, without more, does not involve a basic policy decision by a high level executive which would render the decision maker immune from suit. Rather, the decision is more properly characterized as operational, for it involves a type of discretion exercised at an everyday operational level.

(Citation omitted.) *Id.* at 282, 669 P.2d at 456.

As alleged in the petition, the conduct of the individual police officer in the instant case did not involve policy-level decisionmaking, but involved actions which he allegedly took, or refused to take, at the operational level. Thus, the provisions of § 13-910 would not exempt the officer or the city, as his employer, from liability.

For purposes of the Political Subdivisions Tort Claims Act, a tort claim is defined as

> any claim against a political subdivision for money only on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment, under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage, loss, injury, or death but shall not include any claim accruing before January 1, 1970.

§ 13-903(4).

A negligence action brought under the Political Subdivisions Tort Claims Act has the same elements as a negligence action against a private individual, i.e., duty, breach of duty, proximate causation, and damages. *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990). See *Maple v. City of Omaha*, 222 Neb. 293, 384 N.W.2d 254 (1986).

The enumeration of specific acts of negligence should state the ultimate acts of negligence and not the conclusion of the pleader. *Graham v. Simplex Motor Rebuilders, Inc.*, 189 Neb. 507, 203 N.W.2d 494 (1973).

In considering a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992); *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991).

A statement of "facts sufficient to constitute a cause of action" means a narrative of the events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Balfany v. Balfany*, 239 Neb. 391, 476 N.W.2d 681 (1991); *Gruenemeier v. Seven-Up Co.*, 229 Neb. 267, 426 N.W.2d 510 (1988).

Thus, in determining whether the plaintiff's petition stated facts sufficient to constitute a cause of action, it is necessary to examine whether specific facts are enumerated which would serve to establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of plaintiff's damages.

The threshold issue is whether the plaintiff has alleged the existence of facts sufficient to establish that a duty existed between the defendant police officer and the plaintiff. Well over 100 years ago, the U.S. Supreme Court declared that law enforcement officials and, consequently, state and local governments generally may not be held liable for failure to protect individual citizens from harm caused by criminal conduct. *South et al. v. State of Maryland, Use of Pottle*, 59

U.S. (18 How.) 396, 15 L. Ed. 433 (1856).

In its discussion of the duty of care owed by a government employee to the general public, this court quoted from *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982), as follows:

"We shall no longer engage in the speculative exercise of determining whether the tort-feasor has a general duty to the injured party, which spells no recovery, or if he had a specific individual duty which means recovery. [Citations omitted.] Thus, the parameters of duty owed by the state will ordinarily be coextensive with those owed by others."

*Maple v. City of Omaha*, 222 Neb. at 300, 384 N.W.2d at 260. We went on to say:

In any event, we are persuaded by the reasoning of the Arizona court in *Ryan*. However, as noted in *Ryan*, the plaintiff still must show that a duty was owed to him, that this duty was breached, and that an injury was proximately caused by that breach.

*Id.* at 301-02, 384 N.W.2d at 260.

In regard to a general duty to control the conduct of third persons, the Restatement (Second) of Torts § 315 at 122 (1965) states:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

In *Thomas v. City of Philadelphia*, 133 Pa. Commw. 121, 574 A.2d 1205, 1206 (1990), the court discussed the circumstances whereby a special relationship between the police and a crime victim may be established:

In claiming a special relationship, the individual: "must demonstrate that the police were: 1) aware of the *individual's* particular situation or unique status, 2) had knowledge of the potential for the particular harm which the *individual* suffered, and 3) voluntarily assumed, in light of that knowledge, to protect the *individual* from the

precise harm which was occasioned." . . .

The two situations that provide exceptions to the no-duty rule are (1) to protect individuals who have aided law enforcement as informers or witnesses; or (2) where the police have expressly promised to protect specific individuals from precise harm.

(Citation omitted.)

These two situations were discussed at length in *Morgan v. District of Columbia*, 468 A.2d 1306 (D.C. 1983). In observing that "[a] special relationship undoubtedly exists where an individual assists law enforcement officials in the performance of their duties," *id.* at 1312, the court enumerated situations where liability arose because the police made "active use" of a private citizen in investigation or arrest of a criminal. The court went on to note, however, that

[i]n contrast, a special relationship does not come into being simply because an individual requests assistance from the police. . . . Otherwise, a police officer's general duty to the public inevitably would narrow to a special duty to protect each and every person who files a complaint with the department and attaches a request for help. . . .

Nor is the situation changed when the police gratuitously promise to provide protection. . . . A promise to act adds nothing to the obligation law enforcement officers have already assumed as members of a police force guided exclusively by the public interest. . . .

Between these boundaries are circumstances where the police do not benefit from a citizen's aid but nevertheless affirmatively act to protect a specific individual or a specific group of individuals from harm, in such a way as to engender particularized and justifiable reliance.

(Citations omitted.) *Id.* at 1313-14. The court emphasized that the existence of a duty, if any, to a particular individual is determined by police *actions* rather than *representations*. The court also noted:

Hence, more than general reliance is needed to require the police to act on behalf of a particular individual. The plaintiff must specifically act, *see Florence v. Goldberg,*

*supra*, 44 N.Y.2d at 197, 375 N.E.2d at 767, 404 N.Y.S.2d at 587 (plaintiff discontinued walking son to school, having "reason to rely" on presence of crossing guard), or refrain from acting, *see Bloom v. City of New York, supra*, 78 Misc.2d at 1078, 357 N.Y.S.2d at 981 (plaintiff restrained by police from providing own safeguards for property), in such a way as to exhibit particular reliance upon the actions of the police in providing personal protection. Liability is established, therefore, if the police have specifically undertaken to protect a particular individual and the individual has specifically relied upon the undertaking.

468 A.2d at 1315.

Other jurisdictions have found that explicit assurances of protection that give rise to reliance are sufficient to create an actionable duty. For example, in *Chambers-Castanes v. King County*, 100 Wash. 2d 275, 669 P.2d 451 (1983), the court reiterated the general rule that the duty to provide police protection is owed to the public at large and unenforceable as to individual members of the public. The court noted the exception " 'where a relationship exists or has developed between an injured plaintiff and agents of the municipality creating a duty to perform a mandated act for the benefit of particular persons or class of persons.' " *Id*. at 285, 669 P.2d at 457. The court concluded that an actionable duty to provide police services will arise when:

(1) there is some form of privity between the police department and the victim that sets the victim apart from the general public . . . and (2) there are explicit assurances of protection that give rise to reliance on the part of the victim. . . .

The term privity is used in the broad sense of the word and refers to the relationship between the police department and any "reasonably foreseeable plaintiff" . . . . As to the second element, the assurances need not always be specifically averred, as some relationships carry the implicit character of assurance. . . .

(Citations omitted.) *Id*. at 286, 669 P.2d at 458. In that case, 11 calls for assistance were made to the defendant's police

department commencing within 2 minutes of the beginning of an assault upon the plaintiffs and continuing over the period of another 1 hour 4 minutes. In spite of assurances by the police that someone would be right there, it was not until after 1 hour 20 minutes that an officer arrived.

In *De Long v. County of Erie*, 60 N.Y.2d 296, 457 N.E.2d 717, 469 N.Y.S.2d 611 (1983), the estate of a woman killed by a burglar brought suit against a city and county for negligence in their response to the victim's call for assistance made to a special 911 number. She had placed her call for assistance at 9:29, and by 9:42 she had been assaulted and had suffered injuries from which she died. In finding that the city and county had a duty to protect the decedent, the court noted that those seeking emergency assistance were encouraged to call the 911 number, rather than their local police number, and that the victim had been affirmatively assured that help would be there "right away." It should be noted that the decedent lived but 1,300 feet from the village police station and when the neighbor who found her called directly to that station, a police car responded within a minute. The court found that

> [c]onsidering the fact that she was merely a block and a half from the local police station, and was not yet at the mercy of the intruder, it cannot be said as a matter of law that this assurance played no part in her decision to remain in her home and not seek other assistance. Unfortunately, it only increased the risk to her life.

60 N.Y.2d at 305, 457 N.E.2d at 721, 469 N.Y.S.2d at 616.

In the instant case, the city argues that the plaintiff has pled only that she continued to stay home, "the very place where she had sought refuge from her husband," and that her reliance was merely a "general" reliance upon regular police protection. Brief for appellees at 13. However, this argument disregards the consideration that the plaintiff was threatened by her assailant after she retreated to her home and that she allegedly received Officer Green's assurance following this event.

Although the plaintiff's petition contains allegations of specific reliance on Officer Green's assurance of protection, it is not clear from the petition that Officer Green undertook any special action on the plaintiff's behalf. In regard to Officer

Green's response to her concerns, the plaintiff alleges only that "Defendant R. Green stated that she would not need a special watch number and that he would be on duty and would be in the immediate area to protect her."

However, assuming, without deciding, that an officer's assurance alone is sufficient to give rise to a duty, we find that the plaintiff's action was properly dismissed for failure to state facts sufficient to constitute a cause of action.

When testing whether a petition which has been challenged by a demurrer states a cause of action, this court is required to accept as true all the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom; it does not, however, accept as true the conclusions of the pleader. *Lewis v. Union Pacific RR. Co.*, 242 Neb. 744, 497 N.W.2d 33 (1993); *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992).

> The longstanding rule is that to state a cause of action for negligence, one must plead facts from which it can be inferred that the defendant owed a legal duty to protect the plaintiff from injury, that the defendant failed to discharge that duty, and that damage proximately resulted from that failure. See, *First Nat. Bank of Omaha v. State*, 230 Neb. 259, 430 N.W.2d 893 (1988) . . . .

*Widga v. Sandell*, 236 Neb. 798, 801, 464 N.W.2d 155, 158 (1991). " 'The enumeration of specific acts of negligence should state the *ultimate acts of negligence* and not the conclusion of the pleader.' " (Emphasis in original.) *First Nat. Bank of Omaha v. State*, 230 Neb. 259, 262, 430 N.W.2d 893, 896 (1988).

As stated above, the plaintiff alleged that Officer Green assured her that he would be in the immediate area to protect her. She further alleged that she stayed at her residence in reliance on this assurance, although there was no allegation of an alternative which she would have pursued absent such reliance.

In cases such as this, it is necessary to state facts which, if proven, would establish that the defendants owed a duty and that they breached that duty, proximately causing the plaintiff's damages. In regard to Officer Green's alleged negligence, the

264

petition states:

> Defendant R. Green was negligent in failing, refusing and neglecting to protect Plaintiff from her assailant after having affirmatively assured her that he would protect her and in failing, refusing and neglecting to be available to provide protection to Plaintiff after having assured her he would provide protection.

The petition thus relies on bare legal conclusions and generalizations and lacks any allegations of specific *acts* or omissions which would establish a duty as well as a breach of that duty and proximate causation. The petition alleges neither that Officer Green assured plaintiff she could remain at home nor what alternative action plaintiff would have taken absent the claimed assurances made by Officer Green.

The plaintiff failed to allege facts sufficient to constitute a cause of action, and the district court was correct in sustaining the demurrer and dismissing the action.

AFFIRMED.

FAHRNBRUCH, J., concurs.

LANPHIER, J., dissenting.

I respectfully dissent. Plaintiff's petition states that the defendants, the City of Omaha and Officer R. Green, were negligent in "failing . . . to protect Plaintiff from her assailant after having affirmatively assured her that he would protect her and in failing . . . to be available to provide protection to Plaintiff after having assured her" that he would. The petition further alleges she stayed at home in reliance on the representation. The majority determines that the petition "relies on bare legal conclusions and . . . lacks any allegations of specific *acts*" and therefore "failed to allege facts sufficient to constitute a cause of action."

This is incorrect for two reasons.

First, plaintiff's petition states exactly what her action is premised upon: defendant Green's failure to protect plaintiff after assuring her that he would be in the immediate area to do so. These are not legal conclusions, but specific acts which, if proved, establish negligence.

Second, the majority raises the historic standard for applying

a demurrer to a petition. It is well established that the "general allegation of negligence is good against a demurrer" where no motion to make more definite and certain has been filed. *Crawford v. Ham*, 209 Neb. 802, 805, 311 N.W.2d 896, 898 (1981). See, also, *Bunselmeyer v. Hill*, 179 Neb. 140, 137 N.W.2d 354 (1965); *Behrens v. Gottula*, 160 Neb. 103, 69 N.W.2d 384 (1955); *Chicago, R. I. & P. R. Co. v. O'Donnell*, 72 Neb. 900, 101 N.W. 1009 (1904). The petition at issue meets this standard. Also, in considering a demurrer, a court must assume the facts pled in the petition are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged. See, *Lewis v. Union Pacific RR. Co.*, 242 Neb. 744, 497 N.W.2d 33 (1993); *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992). The judgment of the lower court sustaining defendants' demurrer should be reversed.

There are additional reasons defendants' demurrer should have been overruled. The majority cites *Thomas v. City of Philadelphia*, 133 Pa. Commw. 121, 574 A.2d 1205 (1990), to illustrate that the plaintiff in the instant case had not established a relationship with defendant Green which would impose liability. *Thomas* requires that the police (1) be aware of an individual's particular situation, (2) be aware of the potential for the particular harm which was suffered, and (3) assume the duty to protect that individual from that precise harm. *Morgan v. District of Columbia*, 468 A.2d 1306 (D.C. 1983), also cited by the majority, further narrows the circumstances required for a cause of action by requiring the establishment of a "special relationship" between the victim and the police. A special relationship is formed when the police "affirmatively act to protect a specific individual . . . from harm, in such a way as to engender particularized and justifiable reliance." *Id.* at 1313-14. Additionally, the majority notes that the *Morgan* court emphasized that the existence of a duty, if any, to an individual is determined by police actions rather than representations. However, the majority opinion fails to recognize that Officer Green's visit to the plaintiff, together with the representation to protect, constitutes "action." These facts establish misfeasance rather than mere nonfeasance as apparently found by the majority. See *Tarasoff v. Regents of*

*University of California*, 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976). In light of these criteria, defendant Green did have a duty to protect plaintiff.

The pled facts demonstrate that (1) Officer Green was aware of plaintiff's particular situation because he discussed it with her at her home; (2) Officer Green had knowledge of the potential for the particular harm plaintiff suffered, due to events which occurred earlier that evening; (3) Officer Green voluntarily assumed, in light of this knowledge, to protect plaintiff from the precise harm to which plaintiff was subjected. Plaintiff, in reliance on these representations, did not seek shelter elsewhere, but remained in what she perceived to be the safety of her home. Fifteen minutes later, plaintiff's former husband broke down plaintiff's door, chased her across the street, and beat her with a tire iron. These circumstances plainly meet the special relationship requirement of *Morgan* and the relationship requirement of *Thomas*.

If recovery is denied when an officer explicitly assures a victim of domestic or other violence that he or she may remain at home and be protected, and fails to do so, then when can liability be established? To permit defendants to escape liability without even a trial in such circumstances would prevent citizens from ever recovering due to clear negligence of the police following a promise of protection which a hapless victim relies on.

For the reasons cited, I would reverse the judgment of the district court.

WHITE and CAPORALE, JJ., join in this dissent.