DONNELLE GALLION, APPELLANT, V. LEONARD E. WOYTASSEK
ET AL., APPELLEES.
504 N.W.2d 76

Filed August 13, 1993.    No. S-91-384.

Donnelle Gallion, pro se.

Don Stenberg, Attorney General, and Lynn A. Melson for appellees Woytassek and Chung.

Douglas J. Peterson, of Knudsen, Berkheimer, Richardson & Endacott, for appellee Stone.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and LANPHIER, JJ.

HASTINGS, C.J.

The plaintiff, Donnelle Gallion, appeals the order of the district court sustaining the demurrers of the defendants to Gallion's first amended petition and dismissing that petition.

Gallion's consolidated assignments of error allege that the court erred in necessarily finding that his petition failed to state a cause of action and that the court had no jurisdiction of the cause of action, in finding that his petition could not be cured, and in finding that his second amended petition was a nullity and of no effect.

This action was brought pursuant to the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1987 & Cum. Supp. 1990). Gallion filed an amended petition on December 20, 1990, alleging that the defendants, Leonard E. Woytassek, director of the security unit of the Lincoln Regional Center; William R. Stone, Jr., consulting clinical psychologist on contract with the State of Nebraska; and Chin S. Chung, staff psychiatrist at the Lincoln Regional Center, had negligently

diagnosed the appellant in regard to his competency to stand trial. The amended petition further alleged that Gallion had been placed in the Lincoln Regional Center for an examination to determine his ability to stand trial on charges of first degree assault and use of a weapon in the commission of a felony; that Woytassek diagnosed Gallion as suffering from a " 'delusional (paranoid) disorder of the persecutory type' " and as incompetent to stand trial without having complete and accurate information with which to formulate a diagnosis with reasonable medical certainty; that Stone, in his psychological evaluation, cited Lincoln Regional Center records "which he says indicates [sic] plaintiff had voiced the view that the judge and plaintiff's attorney 'are conspiring in some sort of plot' to keep plaintiff in jail because of some theft," that there exist no such records, and that therefore his diagnosis was negligently made on the basis of insufficient evidence; that Chung "suggested" that Gallion suffered from a psychotic paranoid disorder without having performed a full and complete psychiatric examination; and that the negligence of all the defendants was intentional or willful or done with gross carelessness or recklessness. Gallion sought money damages.

The defendants demurred on the grounds of lack of jurisdiction and failure to state facts sufficient to state a cause of action. The time within which Gallion was to submit a brief in opposition to the demurrers was extended to March 8, 1991. Gallion failed to file a brief, but did file on March 14, without obtaining leave of court, a second amended petition. On March 21, the trial court sustained the demurrers for the reasons stated therein and because it did not appear that the defects in the first amended petition could be cured by amendment, and the first amended petition was dismissed. As to the second amended petition, filed March 14, the court found that it was filed without leave of court and more than 10 days after the filing of the demurrers and that therefore, that amended petition was of no effect.

We deal first with Gallion's last assignment of error, that the court erred in finding that the second amended petition was null and void. Because that amended petition appears to be identical in all pertinent aspects to the first amended petition, a ruling on

the merits of the demurrers to the first amended petition would apply with equal force to the second amended petition. Therefore, we turn to a discussion of the merits of the demurrers.

In considering a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993); *Gerken v. Hawkins Constr. Co.*, 243 Neb. 157, 498 N.W.2d 97 (1993).

A statement of facts sufficient to constitute a cause of action means a narrative of the events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Hamilton v. City of Omaha, supra*; *Gerken v. Hawkins Constr. Co., supra*.

Gallion's brief seems to urge that the trial court sustained the demurrers as to Woytassek and Chung on the theory of absolute immunity and as to Stone on the absence of a professional relationship. That does not appear in the record. The district court simply sustained the demurrers "for the reasons stated in said demurrers," which were lack of personal jurisdiction as to Stone, lack of subject matter jurisdiction as to Woytassek and Chung, and the absence of facts alleged sufficient to state a cause of action as to all three defendants. An order sustaining a demurrer will be affirmed if any one of the grounds on which it was asserted is well taken. *Keithley v. Black*, 239 Neb. 685, 477 N.W.2d 806 (1991). We therefore address the claimed deficiency utilized in common by all defendants.

The ultimate claim of Gallion is that all three defendants were guilty of negligence in their diagnoses of Gallion's condition.

Generally, a physician's duty to exercise the required skill or standard of care must arise out of the physician-patient relationship. The relationship can be said to arise when the physician undertakes treatment of the patient. *Flynn v. Bausch*, 238 Neb. 61, 469 N.W.2d 125 (1991).

In *Flynn*, the court, after citing several cases from other jurisdictions supporting those principles, went on to say: "Some courts, however, have held that a physician-patient relationship is not a necessary prerequisite for sustaining an action in medical malpractice, and have grounded liability upon the traditional duty analysis for negligence. See, e.g., *Davis v. Weiskopf*, 108 Ill. App. 3d 505, 439 N.E.2d 60 (1982)." 238 Neb. at 65, 469 N.W.2d at 128.

*Davis v. Weiskopf*, 108 Ill. App. 3d 505, 439 N.E.2d 60 (1982), involved a claim by the plaintiff that following an x ray of his right knee that showed a giant cell lesion suggestive of a primary bone neoplasm of malignant origin, a Dr. Weiskopf was advised of the x ray and then consulted with a Dr. Hagman. The plaintiff made an appointment with Dr. Hagman as he was instructed to do, but after two unsuccessful attempts by the plaintiff to see Dr. Hagman, he was informed that Dr. Hagman would not treat him. The basis of the plaintiff's action was failure to warn the plaintiff of his condition when Dr. Hagman knew or should have known of the results of the x-ray study. The trial court determined as a matter of law that there was no physician-patient relationship between the plaintiff and Dr. Hagman and dismissed the complaint. Although citing cases in which the duties of a physician were recognized after actual treatment had occurred, the appellate court concluded: "We can see no basis for a different rule under the *unusual* circumstances of the present case and conclude that the relationship between plaintiff and defendant was sufficient to impose a duty upon defendant to conform to the requisite standard of care in such cases." (Emphasis supplied.) *Id.* at 512-13, 439 N.E.2d at 65.

In arriving at its decision, the appellate court relied on *Pelham v. Griesheimer*, 92 Ill. 2d 13, 440 N.E.2d 96 (1982), and stated that it

appears to be dispositve [sic] of the preliminary issue presented whether a physician's duty of exercising reasonable care is solely dependent upon a physician-patient relationship with a party. There, the court considered the scope of the professional duty of a defendant attorney to plaintiff, a third party who was not

defendant's client. The court held that privity of contract is not a prerequisite to establishing a duty of care between a nonclient and an attorney in an action for legal malpractice....

*Davis v. Weiskopf*, 108 Ill. App. 3d at 511, 439 N.E.2d at 64. However, in *St. Mary's Church v. Tomek*, 212 Neb. 728, 325 N.W.2d 164 (1982), we held that while a lawyer owes a duty to his or her client to use reasonable care and skill in the discharge of legal duties, ordinarily this duty does not extend to third parties. Thus, we feel that *Davis v. Weiskopf* is of little value as precedent in this jurisdiction.

In *James v. Brown*, 637 S.W.2d 914 (Tex. 1982), the court reversed the court of appeals' affirmance of a summary judgment which had been granted by the trial court in a case in which three psychiatrists were sued because of a claimed negligent misdiagnosis of the plaintiff arising out of an involuntary hospitalization proceeding under the Texas Mental Health Code. The court stated:

> A cause of action for medical malpractice is essentially a negligence action. [Citation omitted.] A psychiatrist owes a duty to his patient to exercise that degree of skill ordinarily employed under similar circumstances by similar specialists in the field. [Citation omitted.] We hold that, as a matter of law, Tex.Rev.Civ.Stat.Ann. arts. 5547-1 *et seq.* impose such a duty on psychiatrists examining patients entrusted to them under the Mental Health Code. Article 5547-18 excuses from liability only those who act in good faith, reasonably, and *without negligence.*

(Emphasis in original.) *James v. Brown*, 637 S.W.2d at 918. As is apparent, Texas has a special statute that the court interpreted to mean that a psychiatrist who fails to act in good faith and without negligence may be liable. Again, we find this of little value in supporting Gallion's position.

The existence of a physician-patient relationship is normally a question of fact; however, the party claiming the existence of the relationship must allege some facts to show that the relationship came into existence. See *Flynn v. Bausch*, 238 Neb. 61, 469 N.W.2d 125 (1991).

The appellant evidently contends that a physician-patient relationship may be inferred from a reading of paragraphs 2 and 6 of the first amended petition. The second paragraph of that petition states that he was placed at the Lincoln Regional Center "by a Douglas County District Court judge for an examination of plaintiff's ability to stand trial on charges of first degree assault and use of a weapon." However, the appellant asserts that at the second paragraph he "merely attempts to inform the court of the purpose of his initial placement at LRC." Brief for appellant at 11. In pertinent part, paragraph 6 states:

> In a psychological evaluation dated October 9, 1989 defendant William R. Stone Jr. Ph.D., Consulting Clinical Psychologist on contract with the State of Nebraska to perform psychological evaluations of persons housed at LRC, cites "LRC records" which he says indicates [sic] plaintiff had voiced the view that the judge and plaintiff's attorney "are conspiring in some sort of plot" to keep plaintiff in jail because of some theft. . . . Utilizing "records" that Stone knew or should have known to be incomplete, or, knowing or having a duty to realize he lacked records supporting his finding, Stone negligently diagnosed plaintiff as suffering from a Paranoid Delusional Disorder. Plaintiff's diagnosis was not determined with reasonable medical certainty.

The appellant further argues that at paragraph 5 of the same petition, which refers to appellee Woytassek's evaluation on November 3, 1988, "it isn't difficult to conclude that the court ordered examination was completed and plaintiff was committed for treatment to LRC nearly a year prior to Stone's examination and diagnosis." Brief for appellant at 11. Although the appellant would have the court find that a physician-patient relationship had been established through a synthesis of these separate assertions, the factual basis for such a finding is lacking. Even if the appellant was accurate in stating that he remained at the Lincoln Regional Center for the purpose of treatment, there are no factual allegations to establish what treatment, if any, Gallion received or that Stone or either of the other two defendants had undertaken to provide

that treatment. In fact, Gallion does not suggest in his argument that a physician-patient relationship existed between himself and Woytassek and Chung. Gallion cannot escape the fact that the introductory allegation in both of his amended petitions was that all acts of negligence occurred while he was a resident of the Lincoln Regional Center, where he had been placed by the court for an examination to determine his ability to stand trial or, as stated in the second amended petition, "pursuant to" Neb. Rev. Stat. § 29-1823 (Reissue 1989).

In *Davis v. Tirrell*, 110 Misc. 2d 889, 443 N.Y.S.2d 136 (1981), the court considered whether a physician-patient relationship was established between the infant plaintiff and a psychiatrist retained by a school district to examine the child and state her opinion as to whether the child should be classified as emotionally handicapped. The court found that the defendant had not been retained to treat the child or to diagnose him for the *purpose* of treatment. In holding that the action should be dismissed due to the absence of any physician-patient relationship which could form the basis for an action based on medical malpractice, the court noted that there were other and perhaps more basic reasons for dismissal, in the following relevant discussion:

> Although the plaintiffs claim that the defendant rendered medical services in the nature of diagnosis of James' condition and that such diagnosis was negligently made, the real basis of their claim for damage is the defendant's testimony as to her opinion given in a quasi-judicial proceeding before the hearing officer. The plaintiffs claim that the defendant's testimony branded James as "emotionally handicapped" and resulted in the emotional stress and mental anguish for which they seek damages.
>
> This Court has been unable to find any case in which a plaintiff has attempted to sue a witness for damages allegedly resulting from his adverse testimony. To permit such an action would make it impossible to find any expert witness willing to risk a lawsuit based on his testimony as to his opinions and conclusions before any tribunal. And such cause of action if permitted would lead to an endless

stream of litigation wherein defeated litigants would seek to redeem loss of the main action by suing to recover damages from those witnesses whose adverse testimony might have brought about the adverse result. . . .

The defendant's testimony like that of any other expert witness was given for the purpose of assisting the tribunal hearing the dispute. It was not binding on anyone and could be accepted or rejected by both the Committee on the Handicapped or the hearing officer or the Commissioner of Education.

*Id*. at 895-96, 443 N.Y.S.2d at 140.

In rejecting a claim of privilege asserted by a mother whose parental rights were terminated, in which she objected to testimony by a practicing psychiatrist who had examined her pursuant to court order, the court in *In Interest of Hoppe*, 289 N.W.2d 613, 617 (Iowa 1980), said: "It is clear that a physician-patient relationship does not arise by reason of a court-ordered examination of the physical or mental condition of a defendant." This is simply a refinement of the general rule, previously cited, which we adopt.

Similarly, in the instant case, the appellees' diagnoses were submitted for the purpose of assisting the court in its determination of the appellant's competency to stand trial; the court was free to accept or reject their opinions.

The question of whether a defendant is competent to stand trial is one of fact to be determined by the trial court, and the means employed in resolving the question are discretionary with the trial court. *Marteney v. State*, 210 Neb. 172, 313 N.W.2d 449 (1981); *State v. Rhodes*, 191 Neb. 131, 214 N.W.2d 259 (1974).

The appellant also asserts that as evidenced by his second amended petition, any defects in his first amended petition could have been cured. He contends that the second amended petition shows that his placement at the Lincoln Regional Center was for the purpose of treatment, pursuant to § 29-1823. Section 29-1823 provides:

> If at any time prior to trial it appears that the accused has become mentally incompetent to stand trial, such disability may be called to the attention of the district

court by the county attorney, by the accused, or any person for the accused. The judge of the district court of the county wherein the accused is to be tried shall have the authority to determine whether or not the accused is competent to stand trial. The district judge may also cause such medical, psychiatric or psychological examination of the accused to be made as he deems warranted and hold such hearing as he deems necessary. Should he determine after a hearing that the accused is mentally incompetent to stand trial he shall order the accused to be committed to a state hospital for the mentally ill until such time as the disability may be removed. The cost of such an examination, when ordered by the court, shall be the expense of the county wherein the crime is charged. The district judge may allow any physician, psychiatrist or psychologist a reasonable fee for his services which amount, when determined by the district judge, shall be certified to the county board who shall cause payment to be made.

This section deals primarily with the determination of the accused's competence to stand trial. While it may be inferred that treatment will be provided "until such time as the disability may be removed," Gallion's placement in the Lincoln Regional Center was for the purpose of examination and diagnosis as to his ability to stand trial and was insufficient to establish that Gallion was diagnosed by Stone for the purpose of treatment, that he received treatment from Stone, or that Stone established a physician-patient relationship with him.

The longstanding rule is that to state a cause of action for negligence, one must plead facts from which it can be inferred that the defendant owed a legal duty to protect the plaintiff from injury, that the defendant failed to discharge that duty, and that damage proximately resulted from that failure. *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993); *Widga v. Sandell*, 236 Neb. 798, 464 N.W.2d 155 (1991).

In his brief, the appellant concludes that in the second amended petition, "[he] simply states that he was a resident of LRC who was placed there under section 29-1823 and that Stone examined and diagnosed him." Brief for appellant at 10.

However, in the absence of facts which would support the appellant's allegation of a physician-patient relationship, no duty has been established. This assignment of error is thus without merit.

The defendants Woytassek and Chung claim the demurrer was properly sustained on the theory that they enjoyed absolute immunity from liability because they rendered opinions for use in court by order of the court. Gallion asserts that officials acting in quasi-judicial functions enjoy only a qualified immunity and that the district court erred in finding that defendants Woytassek and Chung enjoyed absolute immunity.

As alleged in the first amended petition, on October 4, 1988, Woytassek diagnosed the appellant "as having a 'delusional (paranoid) disorder of the persecutory type.' " According to the first amended petition, Woytassek then submitted his diagnosis and finding of incompetence to the Douglas County District Court; based on this finding, the court found Gallion incompetent to stand trial and committed him to the Lincoln Regional Center. As to appellee Chung, the first amended petition asserts that Chung addressed a letter to the court, dated November 2, 1989, suggesting that Gallion suffered from a psychotic paranoid disorder. While Gallion concedes that Woytassek and Chung were acting under orders of the court when they examined him and submitted the results of their examinations, he argues that this should not permit the defendants "to knowingly, willingly and maliciously negligently diagnose" and "submit said diagnosis to the court." Brief for appellant at 9.

In finding that a county attorney enjoys quasi-judicial immunity when acting within the scope of his authority and in good faith, this court noted in *Koch v. Grimminger*, 192 Neb. 706, 223 N.W.2d 833 (1974), that the question of a public official's immunity from suit for torts committed in the course of his official duties had been considered many times by the court. The applicable principle was restated:

> " 'Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him he is sometimes called a quasi judicial officer, and when so acting he is usually given immunity from

liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption.' "
*Id*. at 709, 223 N.W.2d at 835.

In *Koepf v. County of York*, 198 Neb. 67, 251 N.W.2d 866 (1977), this court considered whether a county judge, public prosecutor, and sheriff were immune from liability in an action brought for the wrongful death of a minor child. The court noted that it is clearly established that judges are immune from civil actions for damages for acts performed in the course of their official functions, unless the judge has acted in the clear absence of all jurisdiction and with knowledge of such jurisdictional deficiency.

The court further found that strong policy reasons exist to extend immunity to a public prosecutor, noting that " '[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.' " *Id*. at 71, 251 N.W.2d at 869-70, quoting *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). Similar arguments were found to support a sheriff's immunity from liability for carrying out ministerial acts: "A ministerial officer, acting under a process regular and valid on its face issuing from a court or tribunal with apparent jurisdiction to issue the same, is protected in obeying it." *Koepf v. County of York*, 198 Neb. at 72, 251 N.W.2d at 870.

These policy arguments support our holding today that a psychiatrist who has been directed by a court to evaluate a patient for the purposes of determining competency to stand trial is entitled to absolute immunity from a suit for damages based on that examination, made within the scope of his or her authority and while acting without willfulness, malice, or corruption.

This issue was addressed in *Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir. 1987), *cert. denied* 484 U.S. 832, 108 S. Ct. 108, 98 L. Ed. 2d 67, in which the court reiterated that " 'non-judicial persons who fulfill quasi-judicial functions intimately related to the judicial process have *absolute*

immunity for damage claims arising from their performance of the delegated functions.' " (Emphasis supplied.) (Quoting *Myers v. Morris*, 810 F.2d 1437 (8th Cir. 1987), *cert. denied* 484 U.S. 828, 108 S. Ct. 97, 98 L. Ed. 2d 58.) In *Moses*, a state prisoner brought a civil rights action against a psychiatrist who had performed a competency examination prior to trial. The court found that the psychiatrist had performed a function which was essential to the judicial process and that in such a situation, two problems were likely to develop in the absence of absolute immunity:

> First, psychiatrists will be reluctant to accept court appointments. This will hurt the indigent criminal defendants who, without sound psychiatric help, may not be able to prove their mental deficiencies. Second, the threat of civil liability may taint the psychiatrist's overall opinions. The disinterested objectivity, so necessary to an accurate competency determination, will be lost. In short, only by granting absolute immunity will the paths to the truth remain open.

*Moses v. Parwatikar*, 813 F.2d at 892. See, also, *Burkes v. Callion*, 433 F.2d 318 (9th Cir. 1970), *cert. denied* 403 U.S. 908, 91 S. Ct. 2217, 29 L. Ed. 2d 685 (1971) (court-appointed psychiatrists immune from liability for damages); *Bartlett v. Weimer*, 268 F.2d 860 (7th Cir. 1959), *cert. denied* 361 U.S. 938, 80 S. Ct. 380, 4 L. Ed. 2d 358 (1960); *Bader v. State*, 43 Wash. App. 223, 716 P.2d 925 (1986) (psychiatrists appointed by court act as arm of court and are protected from suit by absolute judicial immunity); *Mullen v. McKnelly*, 693 S.W.2d 837 (Mo. App. 1985) (physician appointed by court to examine mental health of person enjoys same immunity extended to judges); *Siebel v. Kemble*, 63 Haw. 516, 631 P.2d 173 (1981) (court-appointed psychiatrists acting as arm of court entitled to absolute immunity).

Thus, it is evident that in the performance of a court-ordered competency evaluation, a psychiatrist is acting as a quasi-judicial officer, and we hold that he or she is entitled to absolute immunity from liability when acting in the course of those official duties. While Gallion contends that an action against a judicially immune official may be maintained when it

is shown that such official acted outside of his or her jurisdiction, the petition fails to allege facts which would establish that the defendants so acted. In *Koch v. Grimminger*, 192 Neb. 706, 223 N.W.2d 833 (1974), this court noted that quasi-judicial immunity would not protect a prosecutor who acted outside the scope of his or her authority by filing a charge with the knowledge that it was groundless in law or in fact, thus acting with a corrupt motive. While the plaintiff in that case had alleged that the defendant had acted maliciously, intentionally, and recklessly, the court stated that

> [t]he use of such words alone without allegations of fact from which malice or corruption may be inferred is insufficient to allege malice, corruption, or intentional wrongdoing in fact so as to take the acts outside the scope of his authority. The words in question constitute mere legal conclusions. Where it is necessary to allege actual corruption or bad motive or malice in order to state a cause of action, there must be an allegation of the ultimate facts from which the conclusion may be inferred in order to withstand a demurrer.

*Id.* at 714, 223 N.W.2d at 837.

The first amended petition fails to allege facts which would establish that appellees Woytassek and Chung acted outside the scope of their authority. Thus, as to Woytassek and Chung, the immunity afforded to quasi-judicial officials applies; the first amended petition therefore fails to state facts sufficient to constitute a cause of action, and the demurrer of Woytassek and Chung was properly sustained on that ground.

Finally, Gallion contends that the district court erred in finding that the defects in the first amended petition could not be cured.

Citing Neb. Rev. Stat. § 25-854 (Reissue 1989), we held in *Wichman v. Naylor*, 241 Neb. 249, 487 N.W.2d 291 (1992), that a court, after sustaining a demurrer, must afford the plaintiff the opportunity to replead by amending his or her petition. That section provides that "[i]f the demurrer be sustained, the adverse party may amend, if the defect can be remedied by way of amendment, with or without costs, as the court in its discretion shall direct."

Section 25-854 does not provide an absolute right of amendment. Before error can be predicated upon the refusal of the court to permit an amendment to a petition after demurrer thereto is sustained, the record must show that under the circumstances, the ruling of the court was an abuse of discretion. *Suzuki v. Gateway Realty*, 207 Neb. 562, 299 N.W.2d 762 (1980).

The appellant erroneously argues that he has shown with his second amended petition that defects in the first amended petition could have been cured, and he has apparently attempted to cure any deficiencies with slight modifications in the language of the second amended petition. We have given Gallion the benefit of his filing of the second amended petition without discussing the merits of the trial court's ruling that it was a nullity and of no effect. As we have pointed out, it also fails to allege any facts sufficient to constitute a cause of action.

If there is no reasonable possibility that a cause of action can be stated, after the sustaining of a demurrer, leave to amend the pleadings need not be granted. *Schmuecker Bros. Implement v. Sobotka*, 217 Neb. 114, 348 N.W.2d 130 (1984).

Gallion has twice alleged that he was placed in the Lincoln Regional Center for the purpose of an examination, once directly and once by inference in claiming that he was placed there pursuant to § 29-1823, which by its very terms is for the purpose of examination. It would appear that having proceeded on that theory, he cannot now be heard again to attempt to change his factual allegations to conform to the exigencies of the case. There appear to be no facts which could be pleaded to overcome the rule of absolute immunity or to prove the existence of a physician-patient relationship.

The judgment of the district court is affirmed.

AFFIRMED.

FAHRNBRUCH, J., not participating.